STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| City of Burlington, | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | Docket No. 188-10-03 Vtec |
| | } | |
| Bruce L. Richardson and | } | |
| Beverly L. Richardson, | } | |
| Defendants. | } | |
| | } | |

Decision and Order on Cross-Motions for Summary Judgment

The City of Burlington brought this enforcement action originally in October of 2003, only pursuant to 24 V.S.A. §§4444 and 4445 (now 24 V.S.A. §§4451 and 4452). Its amended complaint was filed on August 10, 2005[1], citing 24 V.S.A. §§4451, 4452, and also 4470(b). The City is represented by Kimberlee J. Sturtevant, Esq.; Defendants Bruce and Beverly Richardson ("Defendants" or "the Richardsons") are represented by Joseph S. Bauer, Esq. The parties have moved for summary judgment. The following facts are undisputed unless otherwise noted.

In 1971, Defendants purchased the house at 441 Shelburne Road[2] (No. 441), a corner lot on the northwest side of the intersection of Shelburne Road and Lyman Avenue, in a Residential-Medium Density zoning district of the City of Burlington. A private access

---

[1] References are to the corrected paragraph numbering from the version filed on November 28, 2005.

[2] Also called Shelburne Street in many documents.

road or alley runs along the rear of the properties facing Shelburne Road, between them and the side lot line of the next adjacent property on Lyman Avenue.

Facts are in dispute as to whether, in 1971, No. 441 was in use as an owner-occupied rooming house.[3] Defendants occupied it as their residence. Defendants also operated a day care facility in No. 441. In 1971 Defendants obtained a zoning permit to convert the basement of No. 441 to a three-room apartment. Material facts are in dispute as to when and the extent to which Defendants did convert or rent out the basement apartment in No. 441. Facts are in dispute as to whether or to what extent Defendants also operated the remainder of No. 441 as a rooming house; however, as stated in footnote 3, those facts may not be material to this case.

In 1980, Defendant Beverly Richardson applied for a zoning permit for an addition to No. 441. The application stated that the then-existing use of the property was "single family & nursery school." The zoning permit was issued on May 5, 1980, authorizing a two-story, 25' x 30' addition and a 12' x 20' deck to be built onto to the rear of No. 441, with parking beneath. The neighbors appealed primarily on the basis of lot coverage, and the then-Zoning Board of Adjustment (ZBA) denied the appeal (upholding the permit) on October 2, 1980, on the basis that the lot coverage exceeded 35% only by a de minimis amount of 0.2%.

Later that year, Defendants obtained a zoning permit dated October 27, 1980 to install doors on the Lyman Avenue side of the front porch of No. 441. That application, signed by Defendant Beverly Richardson, stated that the then-existing use of the property was "single family & nursery & apt."

In 1981, Defendants purchased the next-door house at 435 Shelburne Road (No. 435).

---

[3] However, those facts may not be material to this case, as conditional use as a rooming house was denied in 1981 and not appealed.

Material facts are in dispute as to whether it had been in use as a single-family rental house, rented to persons living as a single household unit, or as a rooming house.

Prior to the closing, Defendant Beverly Richardson applied for a zoning permit for both 435 and 441 Shelburne Street: "to join two buildings on adjacent lots by means of a 18' x 22' two story garage and room; 435 Shelburne to be used as a rooming house for 10 people." The existing use of the property[4] is described on the application as "day care and single family living." The application was referred to the ZBA for hearing, presumably because it required conditional use approval. The request for appearance at the ZBA signed by Ms. Richardson describes the address of the property referred to in the request as "435 & 441 Shelburne Road" and states as the reason for appearance: "requesting a conditional use to establish a boarding and rooming house for 10 people at 435 and/or 441 Shelburne Rd. according to Section 8, (B), (9), Appendix A, Burlington Code of Ordinances."

At the hearing on October 7, 1981, Ms. Richardson's attorney explained that Ms. Richardson was unable to attend the hearing due to illness, that she currently owned and lived at No. 441, and that she was to take ownership of No. 435 within a few days. He described her intention "to join the two buildings with a connector and have four bedrooms in the connector and four bedrooms" in No. 435. He explained that No. 435 was expected to be licensed by the state as a Level IV Community Care Home (that is, offering so-called custodial care rather than nursing care), but that, by applying in the boarding house use category,[5] Defendants would have more flexibility in the use of their property.

---

[4] This may have been intended as a description only of No. 441, as it appears on the application form directly below the line for the owner's address, which is filled in as 441 Shelburne Rd.

[5] The Zoning Ordinance in effect in 1981 has not been provided to the Court; it appears that the use category of 'boarding house' or 'rooming house' must have been a

At the hearing, in response to inquiries from the ZBA about possible zoning violations at No. 441, Ms. Richardson's attorney emphasized that all that was before the ZBA was what was proposed for No. 435. The Zoning Administrator was called to the meeting to explain about any ongoing violations at No. 441, and stated that to his knowledge there were no violations at that time. To clarify Ms. Richardson's intentions regarding No. 441, her attorney stated that she would continue to operate a day care center for twenty children, and that she might be taking in up to four extended family members who would live there as a single family unit. No mention was made at that hearing of the basement apartment at No. 441.

At the October 7, 1981 hearing, the ZBA voted to deny the application to use No. 435 and the connector as a boarding house with eight bedrooms for ten people, ruling that the proposal would adversely affect the character of the neighborhood, would intensify the existing use, and would tax the municipal facilities, specifically the sewer. A written decision was issued on November 13, 1981, in which the ZBA concluded that the proposed use would adversely affect the capacity of the sewer system, that the character of the area would be adversely affected by the addition of "a boarding house of such magnitude, particularly when combined with the already existing day-care center," that the primary use of the two lots will substantially change, and that the traffic on the common private road at the rear of the property will "be unduly increased."

The Richardsons did not appeal[6] the ZBA's denial of conditional use approval to use

_____

conditional use in the district, or else this application would not have been before the ZBA.

[6] An appeal would have had to have been filed by mid-December of 1981. Rather, they brought an action some time in 1982 under the Declaratory Judgment Act, Richardson v. City of Burlington, Docket No. S266-82 CnC, claiming that they should have received deemed approval of their conditional use application and claiming that the Burlington zoning ordinance failed to include the required statutory standards for conditional use

4

No. 435 and the proposed connector for a ten person/eight bedroom boarding house, although that appeal would have been de novo before the Chittenden Superior Court.

Defendants combined the properties into a single lot by deed on March 23, 1982.

As well as requiring conditional use approval by the ZBA for a rooming house,[7] the project required a so-called Certificate of Appropriateness (COA) from the Planning Commission, because the project required site plan review. Defendants applied on July 1, 1982, for site plan approval from the Planning Commission, which was assigned COA number 82-069. This application form was not signed by the applicant, but she was present at the hearing held on it on July 22, 1982. See Attachment D to Exhibit 1, filed Sept 22, 2005 with the City's Motion for Summary Judgment.

The Planning Commission considered the application at its July 22, 1982 hearing. Mrs. Richardson was present, as well as her attorney, who stated that she and her family reside at No. 441, which is used as a day care center during the day, that the proposal involves constructing a 22' x 24' two-story addition connecting the two structures ("the Connector"), that No. 435 would be a Level IV Community Care Home to house ten elderly people, that the proposed Connector would have parking and storage underneath it, that the dumpster would be moved to the Lyman Avenue side of the property with a stockade

approval. By decisions in February 1984 and May 1984, the Superior Court ruled that the conditional use standards of the state statute were incorporated by action of law in the municipal ordinance, that the ZBA had 60 rather than 45 days to act, that in any event it had rendered a timely decision, and that the issues should have been raised by a timely appeal rather than under the Declaratory Judgment Act. An appeal to the Vermont Supreme Court was later dismissed by agreement of the parties in November 1984. See Exhibit 2, filed Sept. 22, 2005 with the City's Motion for Summary Judgment.

[7] Without the Zoning Ordinance in effect in 1982, we cannot determine whether a community care home also required conditional use approval, or whether it was considered a permitted use in the district.

fence around it, and that seven parking spaces would be provided, as shown on the site plan.

No vote is reflected in the minutes of the July 22, 1982 Planning Commission hearing, which were later approved on September 13, 1982. The zoning permit/COA form, signed by the same person as both Planning Director and as Zoning Administrator, reflects that the COA for site plan approval was denied that same day, July 22, 1982, "on the basis of traffic access and circulation of parking," and that the zoning permit was also denied that date. Defendants appealed the Planning Commission's July 22, 1982 decision on Certificate of Appropriateness #82-26 to the Chittenden Superior Court on August 23, 1982; it was given Docket No. S80-82 CnM. The parties to the appeal were the Richardsons, the City of Burlington, and the westerly adjoining neighbor along Lyman Avenue ( across the private access).

While that appeal was pending, Ms. Richardson appealed to the ZBA a February 1983 decision of the Zoning Administrator ordering her to remove or change a deck and stairs constructed in what would have been the side yard setback between the two lots if the two lots had not been merged. In the alternative, she applied for a variance. By that time, as reflected in the findings of the ZBA, due to the denial of her application to build the connector, her intention was to operate a six-person community care home at No. 435. The ZBA denied both the appeal and the variance on May 31, 1983. This decision of the ZBA was not appealed and became final.

In settlement of the Planning Commission appeal, based upon the stipulation of the parties, the Chittenden Superior Court entered an order in Docket No. S80-82 CnM granting the Richardsons a certificate of Site Plan Approval, to construct the 22' x 24' two story Connector structure and related site improvements according to the proposed site plan, and to operate an up-to-ten-person convalescent home at No. 435 (apparently including the Connector), and allowing no more than four persons to occupy the

6

Connector. The order specifically required all parking spaces and driveways to be located as provided on the plan, required all landscaping[8] on the plan to be in place within a month of completion of the Connector, and provided that no Certificate of Occupancy shall be issued until the landscaping had been completed. No person was to occupy or use the Connector until the Certificate of Occupancy had been issued. The parking spaces were to be reserved for persons other than the residents of the convalescent home, and visiting hours at the convalescent home were limited to other than the hours of operation of the daycare, which were established to be Monday through Friday from 7:00 a.m. to 5:30 p.m. The order recognized that the Richardson residence, the convalescent home, and the daycare were operated from the single combined structure, and limited the combined occupancy of the convalescent home and daycare to an average of 25 persons, so that the combined occupancy[9] did not exceed 27 persons at any time.

Defendants completed all the construction discussed in the complaint, other than the violations claimed by Defendants to have been cured or to have been authorized by the City's Fire Marshall, by some time in mid-1985.

On April 2, 2003, potential zoning violations at the property were referred to the City's Code Enforcement Office after an inspection that had been done by the City's Fire Department, in cooperation with the State of Vermont Department of Labor and Industry and Agency on Aging. City Code Enforcement inspectors conducted their own inspection on April 17, 2003, and on June 25, 2003, sent Defendants a Notice of Alleged Violation detailing 28 asserted violations and instructing them to correct the asserted violations

[8] Except that installation of the stockade fence at the boundary with the northern neighbor at 431 Shelburne Street was not required until requested by that owner.

[9] It is not clear from the text whether this limit was to include or be exclusive of the Richardson family.

within seven days (of their receipt on June 28, 2003) or the violations would be referred to the City Attorney's Office for enforcement. Defendants did not appeal the Notice of Alleged Violation. Defendants received zoning approval on August 7, 2003, to replace the front and side external stairs, replace six windows, and repair siding.

On October 23, 2003, the City filed this enforcement action in Environmental Court under 24 V.S.A. §§4444 and 4445 (since recodified as §§4451 and 4452). The complaint has since been amended to also assert jurisdiction under 24 V.S.A. §4470(b) (formerly §4470(c)).

On October 27, 2003, the State and Defendants settled a separate Superior Court injunctive action regarding the residential home licencing laws, resulting in an agreed order that the licensed residential care home at No. 435 had ceased operation and was not to provide lodging or other services to individuals who require personal care, that for 90 days no individuals unrelated to Defendants were to reside at No. 435, and certain residents of No. 441 were also to depart, and that no more than nineteen individuals unrelated to Defendants were to reside at the combined premises. The City was not a party to these proceedings and these proceedings did not relate to or settle anything regarding the City's zoning ordinance.

In the present case, the violations alleged in the amended complaint may be grouped as follows for the purposes of this analysis (paragraph numbers in parentheses). All allege violations both of the Zoning Ordinance and of the 1984 Court Order, unless otherwise noted.

The following paragraphs allege changes in the use or occupancy of the buildings: (12) - change of use of No. 435 from approved 10-bed convalescent home to 15 bed/12 person rooming house; (13) - change of use of No. 441 from single-family with approved daycare to [owner-occupied] rooming house; (14) - change of use of basement of connector from storage to residential; (35) - occupancy of connector by more than four persons (order violation only); (36)- occupancy of overall property by more than 27 persons (order

8

violation only); and (37) - occupancy without first obtaining a certificate of occupancy.

The following paragraphs allege construction violations at No. 435: (31) - failed to locate/install 2 parking spaces under west porch; instead, (15) - expanded living space under west porch; (16) - added doors and windows to basement of west side; (21) - constructed shed near [against] north side; (22) - constructed deck and walkway on northwest corner; and (17) - removed[10] windows at north corner of west side first floor.

The following paragraphs allege construction violations at the Connector: (18) - enclosed deck; and (19) [failed to install or] removed stairs shown on the site plan as leading from the connector deck down from the walkway along the north side of No. 441.

The following paragraphs allege construction violations[11] at No. 441: (23) constructed a deck;[12] (32) - failed to locate/install 2 parking spaces behind No. 441 as shown on site plan; (39) - enclosed south deck without a permit (ordinance violation only); including the following two paragraphs which Defendants claim describe construction that occurred in the 1970s: (24) - constructed handicapped ramp on south side; (25) - constructed new entrance door to enclosed porch on south side.

The following violations allege construction or site plan violations at the property other than relating to the structures: (26) - failed to pave the access road shown as paved on approved site plan (order violation only); (27) - expanded driveway/parking to north

---

[10] Defendants claim that they covered the windows with plywood but that the widows remain underneath.

[11] In addition, Defendants admitted that they had commenced construction over the deck of No. 441, as alleged in paragraph 20, but claim to have cured this violation by removing the construction; material facts are therefore in dispute regarding this violation.

[12] Defendants claim that this was done at the direction of the Fire Marshall; material facts are therefore in dispute regarding this violation.

beyond that shown on approved site plan; (28) - exterior storage[13] not shown on approved site plan; (29) - failed to relocate chain link fence as shown on approved site plan; (30) - failed to install landscaping as shown on approved site plan; (34) - placed dumpster at the rear (west) of the building rather than south (Lyman Avenue) side as shown on approved site plan; (38) - constructed kennel in [rear] yard (alleged as ordinance violation only, although also is not shown on approved site plan).

Defendants have moved for summary judgment that the enforcement action is time-barred under 24 V.S.A. §4454(a) (former §4496(a)); that enforcement of the 1984 Court Order is time-barred by expiration of the judgment order under 12 V.S.A. §506; that an action under 24 V.S.A. §4470(b) is subject to a six-year statute of limitations from the time the cause of action first accrued, and that in any event the City should be barred by the doctrine of laches from preventing the use of the combined building as a twenty-unit rooming house. Defendants also argue that the 1984 Court Order only relates to the use of No. 435 and the Connector, and that, as to No. 435, the City cannot both seek to enforce the 1984 Court Order and also seek to enforce the DRB's 1982 denial of a permit for the application that gave rise to that court order. The City has moved for summary judgment to require Defendants to conform to the 1984 Court Order.

Two separate zoning enforcement mechanisms, with differing characteristics, are found in the zoning enabling statute. The older zoning enforcement scheme allows enforcement of violations of the zoning ordinance itself, and provides for the imposition of fines (24 V.S.A. former §4444, now §4451) and injunctive relief (24 V.S.A. former §4445, now §4452). Actions under these sections may be brought only by the municipality. The

---

[13] Defendants claim to have cured this violation; material facts are therefore in dispute regarding this violation.

10

imposition of fines under §4451 requires a prior notice of violation and the opportunity to cure. Failure to appeal the notice of violation means that the existence of the violations cannot be contested in a later enforcement proceeding. Town of Charlotte v. Richmond, 158 Vt. 354, 356-57 (1992), and see In re Appeal of Smith, 2006 VT 33.

However, in connection with the remedies sought by the City in this case, Defendants are free to present evidence as to the circumstances of the violations and the appropriate remedy, including whether the violations have been or are capable of being cured, and whether Defendants are applying to amend the 1984 Court Order (due to the discontinuance of the daycare and community care home uses) or applying for any alternative use of the property, and whether duplex, triplex, or other multi-family use of the property is allowed in the district.

The newer zoning enforcement provision was added effective March 15, 1995. 24 V.S.A. former §4470(c), now §4470(b). It requires municipalities to enforce all decisions of a municipal board of adjustment, development review board, or planning commission,[14] and allows interested persons as well as municipalities to bring such enforcement actions. It does not provide for monetary fines, and does not by its terms require a prior notice of violation. It does not apply to direct enforcement of a zoning ordinance violation or violation of zoning permits or certificates of occupancy issued by the zoning administrative officer.

In response to the Vermont Supreme Court's decision in Bianchi v. Lorenz, 166 Vt. 555 (1997), 24 V.S.A. former §4496(a) (now §4454(a)) was adopted in 1998. It provides a fifteen-year statute of limitations "from the date the alleged violation first occurred," for enforcement proceedings brought under 24 V.S.A. former §§4444 and 4445 "relating to the failure to obtain or comply with the terms and conditions of any required municipal land

---

[14] Made applicable to planning commission decisions by 2003, No. 115 (Adj. Sess.).

11

use permit."

To the extent that the complaint in this matter is brought under 24 V.S.A. former §§4444 and 4445, this statute of limitations would be applicable. It would operate to bar the assessment of fines under former §4444 and the imposition of injunctive relief under former §4445 for construction violations that were built or installed more than fifteen years earlier than October of 2003, that is, earlier than October of 1988, and for use violations during any period earlier than October of 1988. It would not operate to bar enforcement under those sections for use violations during the period from October of 1988 to the present, even if they began earlier than October of 1988, because use violations are analyzed as continuing or recurring violations. See City of St. Albans v. Hayford, Docket No. 161-9-03 Vtec (Vt. Environmental Ct., June 1, 2004), and cases cited therein. Property owners cannot initiate a new nonconforming use in violation of the municipal zoning ordinance and acquire a vested right to its continuation, as one goal of zoning is to phase out nonconforming uses. In re Gregoire, 170 Vt. 556, 558 (1999); and see In re Appeal of Richards, 2005 VT 23, ¶6. To rule otherwise would create an incentive for property owners to make clandestine changes from an approved use to an illegal use, in hopes of obtaining the right to continue the clandestine illegal use by the passage of time. 24 V.S.A. §4496 (now §4454) limits the period for searching for defects in title due to hidden zoning violations to the same period applicable to searching for other title defects; it does not authorize the creation of new nonconforming uses.

However, in the present case it is not necessary to dwell on this statute of limitations, as it is specifically not applicable to enforcement actions brought under 24 V.S.A. §4470(b) to enforce decisions of the former ZBA or Planning Commission, or of the Court sitting in place of those tribunals in a de novo appeal. In the present case, in 1981 the ZBA denied conditional use approval for a rooming house use of No. 435 and the Connector. Defendants did not appeal that decision, and it became final. On the other

12

hand, in 1984, the Superior Court, sitting in place of the Planning Commission in a de novo appeal, granted site plan approval of No. 435 and the Connector for the convalescent home use. That decision also became final. Both decisions may be enforced under 24 V.S.A. §4470(b).

Defendants argue that enforcement under 24 V.S.A. §4470(b) of the 1984 Court Order is barred by expiration of the judgment order under 12 V.S.A. §506, or that it is subject to a six-year statute of limitations from the time the cause of action first accrued. Neither of these statutes is applicable, for the same reasons. Although not specifically limited by its terms, 12 V.S.A. §506 must have application only to money judgments, rather than to decrees implementing a court's equity jurisdiction, as the contrary interpretation would create an absurdity. That is, it would be absurd to require a declaratory judgment, for example, settling a boundary dispute, to be renewed after the first six years, or to limit its renewal to a total of twelve years. Rather, litigants who obtain permanent injunctions or quiet title decrees must be able to rely on those court orders as final settlement of the dispute, and to be able to enforce them into the future. If a dispute is settled by a declaration of rights establishing a boundary, or by a permanent injunction, for example, so that one neighbor is permanently enjoined from cutting trees on the other side of the boundary, we find no support in case law or statute to obligate the prevailing party to keep renewing the judgment to have the order remain in effect. Rather, declaratory judgments and permanent injunctions remain in effect and enforceable until or unless they are altered by subsequent court order. See, e.g., J.L. v. Miller, 158 Vt. 601, 607 (1992); Howe v. Willard, 40 Vt. 654 (1868); and see Bear v. Iowa Dist. Court of Tama County, 540 N.W. 2d 439, 441 (Iowa, 1995) and cases cited therein.

Moreover, in the present case the 1984 Court Order would also be also subject to enforcement by a petition for civil contempt, although such a petition would have to be filed in Chittenden Superior Court, as the court that issued the order for which

13

enforcement is sought. See <u>Suitor v. Suitor</u>, 137 Vt. 110 (1979). There is no time limit on enforcement of a court order by civil contempt, and it is applicable to failure to comply with a stipulated settlement order. <u>State v. Pownal Tanning. Co.</u>, 142 Vt. 601 (1983)

Defendants argue that the City should be barred by the doctrine of laches from seeking enforcement of the combined building as a twenty-unit rooming house, as the tax listers' card shows that the tax department was aware that the combined building had twenty bedrooms, and no official zoning action was taken between the 1984 Court Order and the 2003 notices of violation. Equity principles such as laches do apply to the present proceeding, as the City seeks injunctive relief. However, material facts are in dispute as to the circumstances of the delay and as to what occurred on the property or in the municipal departments between the construction of the connector in 1985 and the 2003 inspections.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Summary Judgment is GRANTED in Part to the City in that it may maintain the enforcement action under §4470(b) and that the fifteen-year statute of limitations in §4454(a) is inapplicable to this proceeding.

We will hold a telephone conference (see enclosed notice) to discuss the material facts remaining in dispute and the scheduling of this matter for any remaining hearing, as well as to discuss whether mediation would be useful in this matter at this stage in the proceedings. Please be prepared to discuss the extent to which either party will wish to file in Superior Court regarding modification of or contempt of the 1984 Court Order.

Done at Berlin, Vermont, this 27th day of June, 2006.

_____

14

Merideth Wright
Environmental Judge