**J.L., On Behalf of Himself and Others Similarly Situated v. Sutherland Miller, et al.**

[614 A.2d 808]

No. 91-276

Present: **Allen, C.J., Gibson and Dooley, JJ.**

Opinion Filed May 28, 1992

Motion for Reargument Denied July 2, 1992

*Jacquelyn C. Casey*, Vermont Legal Aid, Inc., Waterbury, and *Eric Avildsen*, Of Counsel, Vermont Legal Aid, Inc., Burlington, for Plaintiffs-Appellees.

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Joseph L. Winn*, Assistant Attorney General, Waterbury, for Defendants-Appellants.

**Allen, C.J.** Defendants, the Commissioner of the Vermont Department of Mental Health and Mental Retardation and the superintendent and various staff members of the Vermont State Hospital, appeal from a decision of the Washington Superior Court denying a motion for relief from a 1985 consent judgment. The consent decree set forth procedures for the involuntary medication of committed patients at the Vermont State Hospital. On appeal, defendants argue that (1) a recent clarification in due process requirements renders procedures in the consent decree superfluous, and (2) the continued judicial enforcement of the decree violates the separation of powers section of the Vermont Constitution. We affirm.

The case began in 1984 as a class action filed in Washington Superior Court against the Commissioner of Mental Health and Mental Retardation and various officials of the Vermont State Hospital (VSH). The resulting consent decree denominated the class as follows:

> All committed patients at VSH who have been or in the future will be administered involuntary medication who have not voluntarily agreed to such treatment and who have not been judicially determined to lack the actual capacity to make medical treatment decisions on their own behalf and whose refusal to voluntarily accept medication has not been overridden by a judge or other surrogate decision-maker after notice, hearing, and factual record adequate for review.

The consent decree requires defendants to utilize certain procedures before involuntarily medicating committed patients. Under the decree, a treatment team's recommendation for involuntary treatment is first reviewed by the VSH medical director in accordance with certain factors. If the medical director agrees with the team that involuntary treatment is

warranted, the director must initiate a fair hearing process by filing a detailed application with a Human Services Board hearing officer, who must conduct a hearing within ten days. The hearing officer must determine if the patient is competent and, if not competent, decide, within three working days, if the patient would consent to treatment if competent. Appeal then may be taken to the Washington Superior Court pursuant to V.R.C.P. 75.

In November, 1990 the commissioner and the VSH executive director filed a motion under V.R.C.P. 60(b)(5) seeking relief from the consent decree on grounds that the decision of the United States Supreme Court in *Washington v. Harper*, 494 U.S. 210 (1990), clarified the procedural requirements a state must follow before it may involuntarily treat a person. Defendants argued that, in light of *Harper*, the procedures set forth under 18 V.S.A. ch. 181 were adequate to protect the class members' right to refuse treatment, rendering the consent decree superfluous and unenforceable.

The trial court denied the motion because defendants failed to "show that they are suffering a grievous wrong brought about by new and unforeseen conditions or that continued enforcement of the decree would be inequitable." The court denied a motion for reconsideration, and the present appeal followed.

I.

Rule 60(b)(5) permits the court to relieve a party from a final judgment when "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." V.R.C.P. 60(b)(5). In 1932, the United States Supreme Court held that a court should modify a consent decree only upon "a clear showing of grievous wrong evoked by new and unforeseen conditions." *United States v. Swift & Co.*, 286 U.S. 106, 119 (1932). The superior court relied upon *Swift* in denying defendants' motion.

The "grievous wrong" standard, however, no longer applies to motions to modify consent decrees related to institutional reform. *Rufo v. Inmates of Suffolk County Jail*, — U.S. —, —,

112 S. Ct. 748, 764–65 (1992). In *Rufo*, the Supreme Court announced a new flexible approach, "essential to achieving the goals of reform litigation," and held that the "grievous wrong" language of *Swift* "was not intended to take on a talismanic quality, warding off virtually all efforts to modify consent decrees." *Id.* at —, 112 S. Ct. at 758.

■ A party seeking modification under Rule 60(b)(5) now has the burden of showing either a "significant change in factual conditions or in law." *Id.* at —, 112 S. Ct. at 760. Modification of a decree is warranted when "changed factual conditions make compliance . . . substantially more onerous." *Id.* Furthermore, a consent decree must be modified when a change in law renders impermissible an obligation imposed by its terms, and may be modified when the "law has changed to make legal what the decree was designed to prevent." *Id.* at —, 112 S. Ct. at 762. The Court cautioned, however, that notwithstanding a more flexible approach, clarifications in the law do not provide a basis for modification unless the parties had "based their agreement on a misunderstanding of the governing law," *id.* at —, 112 S. Ct. at 763, and that Rule 60(b)(5) provides relief when continued enforcement of the decree would be inequitable, not merely inconvenient. *Id.* at —, 112 S. Ct. at 758. To hold otherwise, the Court noted, would open "the door for relitigation of the merits of every affected consent decree[,] would undermine the finality of such agreements and could serve as a disincentive to negotiation of settlements in institutional reform litigation." *Id.* at —, 112 S. Ct. at 763.

■ We find that, even under this new, more flexible standard, defendants failed to demonstrate either a change in facts or law sufficient to warrant modification of the decree. Defendants do not allege any change in factual circumstances making compliance with the decree substantially more onerous, and we therefore confine our analysis to whether there have been changes or clarifications in the law of due process which provided the basis for the consent decree. Defendants assert that by clarifying the due process principles addressed by the consent decree, *Harper* removed the "constitutional deficiency" that prompted the action resulting in the decree. A review of *Harper* leaves us unconvinced that it clarifies the procedural

requirements a state must comply with before it may involuntarily medicate an individual. In *Harper*, a mentally ill state prisoner challenged the State of Washington's prison policy authorizing his treatment with antipsychotic drugs against his will without a judicial hearing. 494 U.S. at 217. The Washington Supreme Court found that the policy violated due process guarantees, and the State appealed. *Id.* at 218. The United States Supreme Court held that the administrative procedures set by policy, including provision for review by administrative panel instead of a court, met federal procedural due process requirements. *Id.* at 231–32. The Court, however, focused in significant part on the plaintiff's status as a prisoner: "[t]he extent of a prisoner's right under the [Due Process] Clause to avoid the unwanted administration of antipsychotic drugs must be defined in the context of the inmate's confinement." *Id.* at 222. The Court also stated that "[t]he legitimacy, and the necessity, of considering the State's interests in prison safety and security are well established by our cases." *Id.* at 223. *Harper* does not state or imply that the due process standards to be imposed in an involuntary treatment case in a prison setting should be applied to a case arising in a state hospital, as urged by the State. The *Harper* Court, in fact, recognized that the constitutional adequacy of particular statutory procedures will depend on the specific context:

> It is axiomatic that procedural protections must be examined in terms of the substantive rights at stake. But identifying the contours of the substantive right remains a task distinct from deciding what procedural protections are necessary to protect that right.

*Id.* at 220.

The Vermont Mental Health Act of 1968 (18 V.S.A. §§ 7101–9105) provides a general procedure for committing mentally ill persons to the care and custody of the commissioner of mental health and mental retardation. But neither chapter 181, dealing with judicial proceedings, nor chapter 183, relating to care and treatment, spells out specific constitutional safeguards concerning involuntary treatment, and neither addresses the procedures or standards for determining whether a committed person can be forcibly medicated. It was the goal of the consent decree, in effect, to "identify the contours of the substantive

right." *Harper*, which does nothing to identify those contours in the mental health context, does not reflect a clarification in the law sufficient to warrant modification of the consent decree.

■ Nor does defendants' position find support in the Supreme Court's decision in *Board of Education of Oklahoma City v. Dowell*, 498 U.S. 237, 111 S. Ct. 630 (1991). *Dowell* involved a board of education's petition for relief from a school desegregation order. 498 U.S. at 240, 111 S. Ct. at 633. The Tenth Circuit Court of Appeals had applied *Swift's* requirement of a "grievous wrong evoked by new and unforeseen conditions" and concluded that no such wrong had been shown. *Id.* The Supreme Court reversed, holding that once the purposes of the desegregation litigation had been fully achieved, no additional showing of a "grievous wrong" was required. *Id.* at 249, 111 S. Ct. at 637–38. Defendants misread *Dowell*, which addressed an injunction that was "intended as a *temporary measure* to remedy past discrimination." *Id.* at 247, 111 S. Ct. at 637 (emphasis supplied). There is no factual basis in the present case to indicate that the purposes of the original decree have been fully achieved, or that the past ills have been otherwise addressed and corrected.

## II.

■ Defendants' second argument is that, lacking a constitutional deficiency in the statutory procedures for medicating patients at VSH, the superior court was without jurisdiction to enforce the consent decree. Relying on *State v. Gorton*, 149 Vt. 602, 606, 548 A.2d 419, 422 (1988), they contend that the appropriate means of augmenting due process rights is through legislation, and that continued enforcement of the decree by the court violates the separation of powers clause of the Vermont Constitution. Vt. Const. ch. II, § 5.

Without a clear and definable change in due process standards emanating from *Harper*, however, there are no grounds to question the trial court's continuing jurisdiction to enforce the consent decree. Concerns over the due process implications of involuntary medication continue to warrant careful and consistently applied procedural safeguards. As the consent decree stated:

The parties agree that administration of involuntary medication without the patient's informed consent implicates a liberty interest protected by the due process clause of the Fourteenth Amendment to the United States Constitution.

. . . .

Recognizing these constitutional and common law interests, and without admitting any liability, for the purposes of avoiding the continuation of difficult, expensive, and protracted litigation, the parties waive a trial of this action, waive findings of fact and conclusions of law, and consent to the entry of the orders set forth in the judgment.

Furthermore, even assuming that *Harper* eliminated the constitutional deficiencies addressed in the decree, the parties were free to "do more than that which is minimally required by the Constitution." *Rufo*, — U.S. at —, 112 S. Ct. at 764.

Since *Harper* does not alter the principles upon which the consent decree rested, and since there has been no demonstration of changed circumstances, there are no grounds to question the superior court's continued supervision of the decree. The decree is a proper exercise of judicial power, and its enforcement raises no questions of separation of powers.

*Affirmed.*