## J.L. v. Sutherland Miller, et al.

[817 A.2d 1]

No. 00-430

Present: **Morse, J., and DiMauro, D.J., Allen, C.J. (Ret.) and Gibson, J. (Ret.),**
**Specially Assigned**

Opinion Filed October 18, 2002

*John J. McCullough III, Vermont Legal Aid, Inc.,* Waterbury, for Plaintiff-Appellee J.L.

---

*O. Whitman Smith* of *Mickenberg, Dunn, Kochman, Lachs & Smith, PLC*, Burlington, for Plaintiffs-Appellees R.B., S.H. and Vermont Protection and Advocacy, Inc.

*Robert Appel*, Defender General, Montpelier, for Plaintiff-Appellee R.B.

*William Sorrell*, Attorney General, Montpelier, and *Jennifer L. Myka*, Assistant Attorney General, and *Sean Brown*, Law Clerk (On the Brief), Waterbury, for Defendants-Appellants.

**Morse, J.** Defendants Sutherland Miller, Commissioner, Vermont Department of Developmental and Mental Health Services; Rodney Copeland, Superintendent, Vermont State Hospital; Brij Sarran, Staff Psychiatrist, Vermont State Hospital; Nancy Belle Collett, Staff Psychiatrist, Vermont State Hospital; and Rafael E. Garcia, Staff Psychiatrist, Vermont State Hospital, appeal the denial of a motion for relief from judgment under V.R.C.P. 60(b)(5). Defendants had asked the superior court to vacate the "J. L. Consent Decree," entered into in May 1985, because in 1998 the Legislature adopted legislation expressly stating that "the J. L. v. Miller consent judgment [is] no longer applicable." 1997, No. 114 (Adj. Sess.), § 1 (codified as 18 V.S.A. § 7629(d)). We hold that the legislative enactment of Act 114 supersedes the J.L. Consent Decree by operation of law, compelling us to reverse the trial court's ruling and grant the motion for relief from judgment.

The underlying case dates back to May 28, 1985, when the Washington Superior Court approved a consent decree entered into by J.L. and the Vermont Department of Developmental and Mental Health Services. The decree was intended to provide both procedural and substantive protections to members of a class of individuals who had been committed to the Vermont State Hospital at Waterbury and were facing involuntary, nonemergency medication. The rules established by that decree have effectively withstood continued challenges and provided the controlling regulations for involuntary mental health treatment since its entry in 1985. See, e.g., *J.L. v. Miller*, 158 Vt. 601, 614 A.2d 808 (1992) ("J.L. I").

Both expressly and in substance, Act 114 replaced the decree. The Legislature's primary purpose in passing Act 114 was to provide a judicial process through which "the right of a legally competent person to determine whether or not to accept medical treatment" would be protected. 18 V.S.A. § 7629(a). However, while Act 114 provides a new and different set of procedures for the treatment of individuals facing

involuntary medication, it also has some substantial similarities to the J.L. Consent Decree. For instance, both Act 114 and the J.L. Consent Decree provide for the patient to receive representation, as well as an independent psychiatric evaluation, 18 V.S.A. § 7625(a); *J.L. v. Miller*, No. 5-418-84-WnC, at 8 (Vt. Sup. Ct. Washington County, May 28, 1985) ("J. L. Consent Decree"), and each requires a demonstration of proof by clear and convincing evidence in their respective hearings. 18 V.S.A. § 7625(b); J.L. Consent Decree, at 8.

It is in those hearings that the differences are found. While the Consent Decree provided that a hearing prior to any involuntary nonemergency medication occur in front of an officer appointed by agreement between the Human Services Board and the Commissioner of Developmental and Mental Health Services, J.L. Consent Decree, at 7, Act 114 requires a comparable hearing to take place in family court, after the filing of a petition by the same commissioner. 18 V.S.A. § 7625(a). That petition requires certification by a treating physician which describes the person's mental illness, the necessity of involuntary medication, a list of proposed medications, a statement of risks and benefits, the person's prognosis with and without medication, the current state of the person's health, the current relevant facts concerning the individual, what alternate treatments were proposed and why they were ruled out, and whether the person has executed a durable power of attorney for health care. *Id.* § 7624(c)(1)-(7).

Under the J.L. Consent Decree, an application for a hearing must include the original request to pursue involuntary treatment, the approval and recommendation of the Medical Director of the Vermont State Hospital, and the facts relied on in the assertion of incompetence. J.L. Consent Decree, at 9. Included in the last consideration must be: the nature of the mental illness, the effect of the mental illness on the ability to assimilate information, the information provided to the patient prior to refusal, an assessment of specific areas in which the patient may lack the capacity to make or communicate informed decisions, the individualized treatment plan, the reasons for refusal, a description of alternative remedies and the likelihood of success, a description of any past side effects experienced by the patient from the proposed treatment, and a statement of any potential benefits and risks to the patient if treatment proceeds. *Id.*

At the hearing, if the presiding officer finds that the patient is incompetent, the officer's decision on whether to administer medication is based upon a "substituted judgment" standard. *Id.* at 10. That standard requires the officer to consider whether a patient would

voluntarily consent to medication if competent, and relies on previously expressed preferences, religious convictions, the impact of the decision on the patient, other patients and staff, the patient's family, and the possible risks and benefits of treatment in making that determination. *Id.* In contrast, Act 114 requires that a different standard be applied. Under the statute, upon a finding of incompetence, the family court is required to determine whether involuntary medication is supported by the factors enumerated in § 7627(c). 18 V.S.A. § 7627(e). Those factors are similar to those considered under the J.L. Consent Decree, and mentioned above.

However great we may believe the differences are between the J.L. Consent Decree and Act 114, the most significant connection between the two is enunciated in 18 V.S.A. § 7629(d). In that provision, the Legislature recorded its specific intention to "render the J. L. v. Miller consent judgment no longer applicable." *Id.*

When defendants' motion was first filed, many members of the original class did not oppose it. However, certain individual intervenors and a subclass represented by plaintiff-appellees S.H. and R.B. contested the motion, seeking continued application of the terms of the original decree. They were joined shortly thereafter by another plaintiff, R.B., on behalf of a subclass of prison inmates subject to involuntary medication. After granting the motions to intervene and certifying the subclasses, the superior court heard arguments from all parties. Following the court's denial of their motion for relief from judgment and after an unsuccessful motion for reconsideration, defendants appeal.

The parties maintain that the question before the Court is whether the superior court erred in applying the standard established by the United States Supreme Court in *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992). If the *Rufo* standards apply, the issue is whether the enactment of Act 114, effective July 1, 1998, constituted a sufficient change in circumstances to warrant granting defendants' Rule 60(b)(5) motion requesting termination of the previously controlling consent decree. In *Rufo*, the Sheriff of Suffolk County, Massachusetts and the Massachusetts Commissioner of Corrections sought to modify a consent decree requiring construction of a new jail capable of providing inmates with their own cells. They alleged that unanticipated prison overcrowding prevented them from providing inmates with their own cells. *Id.* at 376. The rule adopted in that case states that "a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances

warrants revision of the decree. If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Id.* at 383.

Relying on *Rufo*, the superior court held that defendants had failed to demonstrate that termination of the J.L. Consent Decree would not result in diminished constitutional protections for members of the J.L. classes. In failing to meet that burden, defendants failed to show a change in circumstances warranting revision of the decree. Additionally, the court held that termination of the entire Consent Decree was not suitably tailored to address the change in circumstances raised by the passage of Act 114.

*Rufo*, however, is immaterial to this case. A Rule 60(b)(5) motion seeking modification of a consent decree based on a change in factual circumstance is only tenuously analogous to the situation at hand. Here, defendants did not seek modification of a consent decree, they sought termination of a consent decree. Defendants' motion in this case was not based on a change in factual circumstance, as was the case in *Rufo*. Nor did they seek a modification based on new case law, as was the situation in *J.L. I*.* In its current iteration, defendants' motion sought to terminate prospective application of the J.L. Consent Decree based on legislative enactment of a statute specifically intended to terminate application of that decree. See 18 V.S.A. § 7629(d). In light of the passage of Act 114, the sole issue presented by this case is whether there is a justiciable controversy. In Article III of the United States Constitution, the jurisdiction of the federal courts is limited to actual cases or controversies. U.S. Const. art. III, § 2. The State of Vermont has adopted the same limitation. *Parker v. Town of Milton,* 169 Vt. 74, 76-77, 726 A.2d 477, 480 (1998); see also *Agency of Natural Resources v. United States Fire Ins. Co.*, 173 Vt. 302, 306, 796 A.2d 476, 479 (2001) ("Vermont has adopted [the federal] requirement"). The presence of an actual controversy "turns on whether the plaintiff is suffering the threat of actual injury to a protected legal interest, or is merely speculating about the impact of some generalized grievance." *Town of Cavendish v. Vt. Pub. Power Supply Auth.*, 141 Vt. 144, 147, 446 A.2d 792, 794 (1982). Furthermore,

---

* In its first look at the J.L. Consent Decree, the State filed a Rule 60(b)(5) motion after the United States Supreme Court's decision in *Washington v. Harper,* 494 U.S. 210 (1990), clarified the procedural requirements necessary for the involuntary treatment of patients. This Court held that because the clarification in *Harper* did not specifically identify the substantive rights in the mental health context, it did not warrant a modification of the consent decree. *J.L. I,* 158 Vt. at 606, 614 A.2d at 812.

the requirement that an actual controversy exist at all times is jurisdictional, and not subject to waiver by either party. *Id.* Absent an actual controversy, any decision of the judicial branch is merely an advisory opinion, and is consequently beyond the authority vested in the judicial branch by the Vermont State Constitution. See *Anderson v. State*, 168 Vt. 641, 644, 723 A.2d 1147, 1149 (1998) (mem.) (claim based on anticipated voter reaction was too speculative to be justiciable); see also *In re Opinion of the Justices*, 115 Vt. 524, 529, 64 A.2d 169, 172 (1949) ("The judicial power, as conferred by the Constitution of this State upon this Court, is the same as that given to the Federal Supreme Court by the United States Constitution . . . .").

The J.L. Consent Decree was entered for the purpose of addressing the absence of procedural safeguards against the forced medication of mental health patients. According to the original complaint, before the decree was entered, the decision to medicate a member of plaintiff's class was made after a short administrative process, conducted entirely within the Vermont State Hospital, and consisted of a unilateral determination by defendants based on the recommendation of an internal hearing officer. In the course of that process, it was alleged that defendants failed to consider or make any determination of plaintiff class member's ability to consent to treatment. However significant the shortfalls of that process may seem, they were addressed first by the Consent Decree, and now by Act 114.

The J.L. Consent Decree has already proven to be a formidable obstacle. Not only did it withstand a direct assault in the superior court, in defendants' Rule 60(b)(5) motion for relief from judgment, but it withstood an attempt by mental health officials to go forward under Act 114 in the Washington Family Court. On July 29, 1998, that court granted four motions to dismiss, holding that "[u]ntil the [J.L.] consent judgment is modified or vacated, it will continue to govern the involuntary medication procedures in Vermont . . . . As a result, this court lacks the jurisdiction to hear the current petitions to involuntarily medicate the respondents."

Continued adherence to the provisions of the J.L. Consent Decree would allow a judicial decree premised on a lack of relevant legislation to withstand the enactment of a statutory scheme intended to cure the deficiency. "[P]arties have no power to continue to insist upon the protection of their rights in a manner different from that chosen by Congress absent constitutional fault." *Williams v. Butz*, 843 F.2d 1335, 1339 (11th Cir. 1988). Courts have a duty to refrain from interfering with the sovereign powers of the legislature as allocated by the state

constitution. See *State v. Ludlow Supermarkets, Inc.*, 141 Vt. 261, 267, 448 A.2d 791, 794 (1982). Moreover, "[i]t becomes an . . . inexcusable abuse of judicial power when . . . a court ignores or defies clear and specific legislative enactments which not only control the subject matter but demonstrate legislative preemption as well." *Payne v. Rozendaal*, 147 Vt. 488, 499, 520 A.2d 586, 592 (1986).

█ In the situation at hand, there can be no weighing of the equities. Once the legislature has asserted its intent to supplant a consent decree, its intent controls until a proper case or controversy directly addresses the statute. Requiring defendants to file a Rule 60(b)(5) motion prior to implementing Act 114 implies that a litigant can bargain away the legislature's right to create the relevant procedures. Further, requiring that defendants' motion demonstrate the constitutionality of the legislatively substituted procedures before those procedures can supplant the Consent Decree denies them the presumption of constitutionality to which legislation is entitled. See *State v. Read*, 165 Vt. 141, 147, 680 A.2d 944, 948 (1996) ("We accord statutes a presumption of constitutionality.").

█ Plaintiffs intimate that Act 114's procedures *might* be unconstitutional. The speculative nature of plaintiffs' fears renders them too abstract to support a controversy. Until and if, in a proper case, one or more provisions of Act 114 are successfully challenged as unconstitutional or otherwise invalid, Act 114 takes precedence over the J.L. Consent Decree. Before Act 114 is implemented, and treatment under its provisions is pending, no proper controversy can arise to support a challenge. The case at hand is not one in which the Court may address the constitutionality of the standard and procedures adopted in the legislation; it is merely the place in which we recognize that the parties to the original action no longer face the original injury they alleged. The absence of a real controversy and the creation of a set of procedures that eclipse the standards of the J.L. Consent Decree render reliance on it as an ongoing remedy unjustified.

*Reversed; the order denying defendants' motion under Rule 60(b)(5) is vacated and defendants' motion for relief from judgment is granted.*