J-S91021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| THOMAS S. GERVASI | : | |
| | : | |
| Appellant | : | No. 821 MDA 2016 |

Appeal from the PCRA Order May 2, 2016
In the Court of Common Pleas of Lackawanna County
Criminal Division at No(s):  CP-35-CR-0000440-2010

BEFORE:   FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY RANSOM, J.:                **FILED FEBRUARY 14, 2017**

Thomas S. Gervasi appeals from the order entered May 2, 2016, dismissing his petition for relief pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

In December 2011, following an eight-day jury trial, Appellant was convicted of six counts of arson, endangering persons; one count of arson, endangering property; two counts of arson, recklessly burning or exploding; one count of insurance fraud; and four counts of criminal mischief.[1] Appellant's was subsequently sentenced to an aggregate term of five to ten years of incarceration followed by one year of special probation.

_____

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S. §§ 3301(a)(1)(i), 3301(c)(3), 3301(d)(2), 4117(a)(3), 3304(a)(1), respectively.

This Court affirmed the judgment of sentence on direct appeal, and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal. ***Commonwealth v. Gervasi***, 82 A.3d 1058 (Pa. Super. 2013) (unpublished memorandum), *appeal denied*, 84 A.3d 1062 (Pa. 2013). On July 28, 2014, Appellant timely filed a PCRA petition *pro se*. In September 2015, through appointed counsel, an amended PCRA petition was filed. In November 2015, an evidentiary hearing was held, at the conclusion of which the PCRA petition was denied.

On May 18, 2016, Appellant timely appealed the dismissal of his PCRA and thereafter filed a court-ordered 1925(b) statement. The court issued a responsive opinion.

Appellant raises the following issues on appeal:

I.     Whether the PCRA court committed reversible error by dismissing Mr. Gervasi's PCRA claim that trial counsel was ineffective for failing to object to and/or request a mistrial following the overwhelmingly prejudicial closing argument by the District Attorney?

II.    Whether the PCRA court committed reversible error by dismissing Mr. Gervasi's PCRA claim that trial counsel was ineffective for failing to request a ***Frye*** hearing regarding the validity and reliability of the Commonwealth's cause and origin expert?

III.   Whether the PCRA court committed reversible error by dismissing Mr. Gervasi's PCRA claim that trial counsel was ineffective for failing to object to the introduction of a flood of evidence regarding his financial difficulties?

IV.    Whether the PCRA court committed reversible error by dismissing Mr. Gervasi's PCRA claim that trial counsel was ineffective for failing to request an appropriate cautionary instruction regarding the pre-trial experiment of the

recreation of the fire conducted by the Commonwealth's expert?

V. Whether the PCRA court committed reversible error by dismissing Mr. Gervasi's PCRA claim that trial counsel was ineffective for failing to file a pre-trial motion to suppress physical evidence where law enforcement investigators performed warrantless post-fire searches and investigations on the property weeks after the fire?

VI. Whether the PCRA court committed reversible error by dismissing Mr. Gervasi's PCRA claim that trial counsel was ineffective for failing to file a pre-trial motion to dismiss the charges based upon an illegitimate pre-trial delay?

Appellant's Brief at 4.

We review an order denying a petition under the PCRA to determine whether the findings of the PCRA court are supported by the evidence of record and free of legal error. *Commonwealth v. Ragan*, 923 A.2d 1169, 1170 (Pa. 2007). We afford the court's findings deference unless there is no support for them in the certified record. *Commonwealth v. Brown*, 48 A.3d 1275, 1277 (Pa. Super. 2012) (citing *Commonwealth v. Anderson*, 995 A.2d 1184, 1189 (Pa. Super. 2010)).

Here, Appellant asserts several claims of ineffective assistance of counsel. We presume counsel is effective. *Commonwealth v. Washington*, 927 A.2d 586, 594 (Pa. 2007). To overcome this presumption and establish the ineffective assistance of counsel, a PCRA petitioner must prove, by a preponderance of the evidence that: "(1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from

counsel's act or omission." ***Commonwealth v. Johnson***, 966 A.2d 523, 533 (Pa. 2009) (citations omitted). "A petitioner establishes prejudice when he demonstrates that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Id.*** A claim will be denied if the petitioner fails to meet any one of these requirements. ***Commonwealth v. Springer***, 961 A.2d 1262, 1267 (Pa. Super. 2008) (citing ***Commonwealth v. Natividad***, 938 A.2d 310, 322 (Pa. 2007)); ***Commonwealth v. Jones***, 942 A.2d 903, 906 (Pa. Super. 2008).

We have reviewed the certified record, the briefs of the parties, the applicable law, and the well-reasoned opinion authored by the Honorable Margaret Bisignani Moyle of the Court of Common Pleas of Lackawanna County, dated July 15, 2016. We conclude that Judge Bisignani's opinion is dispositive of the issues presented in this appeal. Accordingly, we adopt the opinion as our own for purposes of further appellate review.

Order affirmed.
Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/14/2017

- 4 -

| COMMONWEALTH OF PENNSYLVANIA | : IN THE COURT OF COMMON PLEAS : OF LACKAWANNA COUNTY |
|---|---|
| V. | : : : CRIMINAL DIVISION |
| THOMAS GERVASI Defendant | : : 2010 CR 440 |

## OPINION

Bisignani Moyle, J.

## I. PROCEDURAL HISTORY

On December 21, 2011, after an eight day jury trial before this Court, the Defendant Thomas Gervasi (hereinafter "Petitioner") was adjudged guilty of six (6) counts of Arson – Endangering Persons (18 Pa.C.S. §3301(a)(1)(i)), one (1) count of Arson – Endangering Property (18 Pa.C.S. §3301(c)(3)), two (2) counts of Arson – Reckless Burning or Exploding (18 Pa.C.S. §3301(d)(2)), one (1) count of Insurance Fraud (18 Pa.C.S. §4117(a)(3)), and four (4) counts of Criminal Mischief (18 Pa.C.S. §3304(a)(1)); fourteen (14) counts in all, stemming from his involvement in the June 17, 2008 fire of Petitioner's property located at 1021 Mark Avenue in Scranton, PA. As a consequence of the jury's verdict, Petitioner was sentenced on March 16, 2012 to an aggregate sentence of five (5) years to ten (10) years of incarceration at a state correctional facility to be followed by one (1) year of special probation. Soon thereafter, Petitioner submitted post-sentence motions which were denied by this Court. The Petitioner filed a timely direct appeal. On July 8, 2013, the Pennsylvania Superior Court affirmed the judgment of sentence. *See* No. 1533 & 1566 MDA 2012. The Pennsylvania Supreme Court subsequently denied Petitioner's Petition for Allowance of Appeal on January 15, 2014.

1

On July 28, 2014, Petitioner filed *a pro se* Petition for Relief under the Post Conviction Relief Act ("PCRA"). On August 4, 2014, Kurt Lynott, Esq. was appointed as PCRA counsel and on October 2, 2014, an Amended PCRA Petition was filed alleging trial counsel's ineffectiveness. Attorney Lynott, by virtue of a *pro se* petition, was later discharged as counsel. On May 27, 2015, Edward J. Rymsza, Esq. entered his appearance on Petitioner's behalf. On September 14, 2015, an amended PCRA petition was filed. An evidentiary hearing was held on November 20, 2015. Petitioner's trial counsel, Paul J. Walker, Esq., was called to testify. Both parties have submitted memoranda in support of their respective positions, and for the reasons outlined below, the Petition for Post-Conviction collateral relief is denied.

## II.  FACTUAL BACKGROUND

The evidence offered at trial and in various pretrial proceedings demonstrated as follows:

On June 17, 2008, a fire broke out at 1021 Mark Avenue in Scranton. Shortly after the fire was reported, the Scranton Fire Department was dispatched to the scene. (N.T. 12/13/11 at pg. 71). When the Fire Department arrived on the scene, they not only found both the residence and garage at 1021 Mark Avenue on fire, but also the neighboring residences at 1023-1025 Mark Avenue. (*Id.* at 83-84). While fighting the fire, Scranton Fire Fighter Paul Schirra suffered injuries to his shoulder and had to be treated by paramedics on site. (*Id.* at 129-32). Also injured as a result of the fire were Samantha McDonald and her infant son, Nathan Lacomis, residents of 1021 Mark Avenue, who were treated at CMC Hospital in Scranton for their injuries. (N.T. 12/14/11 at pg. 80). In addition, others present on the scene during the fire were Tracy

2

Smith, also a resident of 1021 Mark Avenue; Otto Vasquez, resident and owner of 1023 Mark Avenue; and Jolene and Duey Belles, residents of 1025 Mark Avenue. None of these residents were injured. (N.T. 12/14/11 at pg. 18-45, 108-49); (N.T. 12/13/11 at pg. 68-329). However, the fire destroyed their personal property; some residents lost most of their possessions. (N.T. 12/14/11 at pg. 28, 51-53, 84).

Pennsylvania State Trooper Russell Andress and Scranton Fire Detective Martin Monahan investigated the fire. They discovered that the fire started in the garage attached to 1021 Mark Avenue. (N.T. 12/19/11 at pg. 185); (N.T. 12/16/11 at pg. 190-91). On multiple occasions, the officers spoke with the Defendant, who was the owner and landlord of 1021 Mark Avenue during the time that the fire took place. (N.T. 12/19/11 at pg. 179-183, 187-95); (N.T. 12/16/11 at 185-223). During their conversations the Defendant maintained that, although he was present at 1021 Mark Avenue when the fire was started, he did not know how the fire in the garage began. The Defendant thought that it was either the catalytic converter in his Cadillac Escalade, which was parked in the garage at the time, or an old chain saw, which was also in the garage at the time. He had trouble starting the chainsaw that day. (N.T. 12/16/11 at pg. 185-89).

As the diligent and thorough investigation continued, Trooper Andress and Det. Monahan determined that neither the catalytic converter in the car, nor the defective chain saw was the cause of the fire. (N.T. 12/19/11 at pg. 9-207); (N.T. 12/16/11 at pg. 189-223). Moreover, during the course of the investigation, Trooper Andress became aware of the circumstances surrounding the Defendant's financial situation at the time of the fire. Trooper Andress discovered that the Defendant had filed for

3

bankruptcy in 2004 and was discharged unsuccessfully on June 12, 2008, just five (5) days before the fire. (N.T. 12/14/11 at pg. 259-99). Also, the Defendant owned numerous properties that were in foreclosure at the time of fire, including 1021 Mark Avenue, in addition to multiple liens and late credit card and mortgage payments. (N.T. 12/19/11 at pg. 220-21); (N.T. 12/14/11 at pg. 175-81). At the conclusion of the investigation, Trooper Andress declared the fire an arson, and the Defendant was arrested on January 21, 2010. (Dock. pg. 1-2, Dec. 10, 2010); (N.T. 12/19/11 at pg. 80).

## III. SUMMARY OF ISSUES RAISED ON APPEAL

In his Amended PCRA Petition, Petitioner asserts the following issues which are summarized by this court:

1) Trial counsel was ineffective for failing to object to and/or request a mistrial in connection with alleged prejudicial statements made during the Commonwealth's closing argument.

2) Trial counsel was ineffective for failing to request a Frye hearing.

3) Trial counsel was ineffective for failing to file a motion to suppress evidence.

4) Trial counsel was ineffective for failing to object to evidence and/or failing to request a cautionary instruction regarding Petitioner's financial condition.

5) Trial counsel was ineffective for failing to request an appropriate cautionary instruction relating to Trooper Andress' pretrial experiment.

4

6) Trial counsel was ineffective for failing to file a Pretrial Motion to Dismiss the Criminal Information.

## IV. STANDARD OF REVIEW

"In reviewing the propriety of the PCRA court's denial of a petition for relief the [Appellate Court] is limited to determining whether the record supports the court's findings, and whether the order is otherwise free of legal error. The [Appellate Court] grants great deference to the findings of the PCRA court if the record contains any support for those findings." Commonwealth v. Carr, 768 A.2d 1164, 1166 (Pa. Super. Ct. 2001) *citing* Commonwealth v. Allen, 732 A.2d 582 (Pa. 1999); Commonwealth v. Bell, 706 A.2d 855 (Pa.Super. 1998), appeal denied, 732 A.2d 611 (1998). Further, "there is no absolute right to a hearing pursuant to the PCRA. Rather, the post-conviction court may elect to dismiss a petition if it has thoroughly reviewed the claims and determined that they are utterly without support in the record." Commonwealth v. Brown, 767 A.2d 576, 580 (Pa. Super. 2001) *citing* Commonwealth v. Neal, 713 A.2d 657, 660 (Pa.Super. 1998) *quoting* Commonwealth v. Schultz, 707 A.2d 513, 516 (Pa.Super. 1997) (*internal citation omitted*).

In Pennsylvania, it is well settled that the appropriate analysis for a claim of ineffective assistance of counsel is the following three prong test: 1) whether the underlying claim has arguable merit; 2) whether the course selected by counsel had some reasonable basis designed to effectuate the client's interests; and 3) whether the defendant was actually prejudiced by the ineffectiveness. Commonwealth v. Khalil, 806 A.2d 415, 421-422 (Pa.Super. 2002), appeal denied, 818 A.2d 503 (Pa. 2003). There is a presumption that until proven otherwise, counsel has acted

5

effectively and in the best interest of the defendant. _Id_. It is the PCRA petitioner who bears the burden of proving a claim of ineffective assistance of counsel. _Id_.

If the issue underlying the charge of ineffectiveness is not of arguable merit, counsel will not be deemed ineffective for failing to pursue a claim that lacks merit. Commonwealth v. Fletcher, 750 A.2d 261, 274 (Pa. 2000), cert. denied, 531 U.S. 1035 (2000); Commonwealth v. Carson, 741 A.2d 686, 697 (Pa. 1999), cert. denied, 530 U.S. 1216 (2000). Further, if the PCRA petitioner has not met the prejudice prong, the claim of ineffectiveness may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met. Commonwealth v. Travaglia, 661 A.2d 352, 357 (Pa. 1995), *citing* Strickland v. Washington, 466 U.S. 668, 697 (1984). Moreover, counsel will not be deemed ineffective for pursuing a particular strategy, as long as the course chosen was reasonable. Commonwealth v. Laird, 726 A.2d 346, 357 (Pa. 1999) *citing* Commonwealth v. Ly, 599 A.2d 613, 618 (Pa. 1991).

## V. DISCUSSION

### A. PROSECUTORIAL COMMENT

Petitioner claims that trial counsel was ineffective for failing to object to and/or request a mistrial in connection with the following statement made by the prosecutor during his closing argument:

> But what I want you to take with you is the picture of the individuals sitting in the courtroom in the third row that were displaced, almost killed as a result of this fire when you go back and think about this. Because it's their faces that you should be thinking about because they were the one's [sic] who were affected as a result of this fire. And hold that individual responsible for what he did. Thank you.

6

(N.T. 12/21/11 at pg. 116).

Petitioner contends that trial counsel was ineffective for failing to object, request a mistrial and/or request a curative instruction following this comment. With regard to a claim of prosecutorial misconduct in a closing statement, it is well settled that "the prosecutor is allowed to vigorously argue his case so long as his comments are supported by the evidence or constitute legitimate inferences arising from that evidence. In considering a claim of prosecutorial misconduct, the court shall center its' inquiry on whether the defendant was deprived of a fair trial, not deprived of a perfect one. Thus, a prosecutor's remarks do not constitute reversible error unless their unavoidable effect ... was to prejudice the jury, forming in their mind fixed bias and hostility toward the defendant so that they could not weight the evidence objectively and render a true verdict." Commonwealth v. Bozic, 997 A.2d 1211, 1229 (Pa.Super. 2010) (*internal citations omitted*). A prosecutor does not engage in misconduct when his statements are based on the evidence or made with oratorical flair. Commonwealth v. Judy, 978 A.2d 1015, 1020 (Pa.Super. 2009).

Petitioner asserts that the subject remarks were prejudicial, inflammatory and objectionable on several levels. Namely, the Petitioner alleges that the comments were used to invoke the sympathy of the jury for the victims by improperly injecting an irrelevant and broader issue than the Petitioner's guilt or innocence. He contends that the prosecutor's statement that the residents were "almost killed" was factually dishonest, and since the evidence was not, in fact, "overwhelming" it ultimately misled the jury. Finally, he points out that the comments were the final words of the closing argument made approximately three days prior to Christmas, therefore appealing to a

7

"heightened sensitivity" for the residents being homeless as a result of the Petitioner's actions.

In its response, the Commonwealth highlights the failure of trial counsel to object to the statement as he did not believe the comments were inflammatory or objectionable. Furthermore, the Commonwealth argues that the remarks were a fair comment on the evidence, a fair response to the arguments of defense counsel, and an appropriate exercise or oratorical flair. *See* Commonwealth v. Jones, 683 A.2d 1181, 1199 (Pa.1996). It is important to note that several firefighters were injured during the course of fighting the fire. In fact, Commonwealth witness Detective Martin Monahan testified that in the hundreds of fires he had investigated, this was one of the hottest. Several people were displaced from the homes and two received hospital treatment, including an infant for smoke inhalation. That same infant was almost dropped from a second floor as several witnesses encouraged his mother to do. Accordingly, the prosecutor's statement that people were "almost killed" was within the permissible boundaries of courtroom rhetoric. However, the Petitioner fails to mention that during closing arguments, the prosecutor admitted to the jury that the Petitioner did not intend to kill anyone but rather to destroy his properties.

Petitioner's assertion, that the remarks at the end of the closing argument three days prior to Christmas, has no effect on this court's determination. One could argue that the same "heightened sensitivity" could have predisposed jurors to an acquittal. The court specifically instructed the jury, on two separate occasions, that the arguments of counsel were not evidence. Thus, nothing contained in the closing argument had the "unavoidable effect" of forming in the jury's mind "fixed bias and

8

hostility towards the defendant." In fact, the prosecutor's argument was an attempt to focus the jury's deliberation on the risk created by the Petitioner's actions. As the Pennsylvania Superior Court stated in Judy, a prosecutor's comments do not constitute prosecutorial misconduct where "[t]he prosecutor was not diverting the jury from deciding the case on the evidence; rather he was imploring the jury to do so." Id. at 1028. As the prosecutor's comments were not improper, trial counsel cannot be faulted for failing to object. Therefore, this Court denies this claim.

## B. REQUEST FOR FRYE HEARING

The second issue raised by the Petitioner is whether trial counsel was ineffective for failing to request a Frye hearing. The allegation relates to Trooper Andress' "process of elimination method" in determining the cause of the fire. Petitioner asserts that the investigative technique is part of a broader method known as the "negative corpus" method. Petitioner alleges that the negative corpus method was found to be improper and ultimately rejected by the National Fire Protection Association (hereinafter NFPA) in 2011. Based on his reading of the NFPA 921, a document establishing accepted guidelines in the area of fire investigations, Petitioner claims that Trooper Andress' process of elimination method falls under the guise of a negative corpus investigative methodology which has been deemed inappropriate and inconsistent per the NFPA 2011. Accordingly, he maintains trial counsel's ineffectiveness for failure to request a Frye hearing.

Questions concerning the admission of novel scientific evidence are governed by the "general acceptance" rule which was originally articulated in Frye v. United States, 293 F. 1013 (D.C. Cir. 1923). Frye remains the controlling evidentiary

9

standard in Pennsylvania. *See* Grady v. Frito-Lay, Inc., 576 Pa. 546, 839 A.2d 1038, 1045-46 (2003). Rule 207.1 of the Pennsylvania Rules of Civil Procedure sets forth the procedure to be followed if a party seeks "to exclude expert testimony which relies upon novel scientific evidence, on the basis that it is inadmissible under Pa. R.E. 702 or 703." *See also* the Note to Rule 207.1 (making it clear that although evidentiary hearings are available to the court to resolve Frye motions, they should be utilized in "limited circumstances").

Under Frye and Rule 207.1, the proponent of expert scientific evidence bears the burden of establishing that the methodology that an expert is utilizing is generally accepted by the relevant scientific community before the evidence will be admitted in a court of law. Commonwealth v. Delbridge, 859 A.2d 1254, 1260 n.4 (Pa. 2004); Grady, 839 A.2d at 1045; Cassell v. Lancaster Mennonite Conference, 834 A.2d 1185, 1189 (Pa. Super. 2003), *appeal granted in part*, 578 Pa. 428, 853 A.2d 1109 (2004). As an exclusionary rule of evidence, the Frye rule "must be construed narrowly so as not to impede admissibility of evidence that will aid the trier of fact in the search for truth." Trach v. Fellin, 817 A.2d 1102, 1104 (Pa. Super. 2003), *app. denied*, 577 Pa. 725, 847 A.2d 1288 (2004).

The Pennsylvania Appellate Courts have cautioned "that a Frye analysis is not triggered every time science enters the courtroom." Commonwealth v. Dengler, 843 A.2d 1241, 1243 (Pa. Super. 2004), *appeal granted*, 578 Pa. 715, 854 A.2d 967 (2004), *citing* Trach, 817 A.2d at 1109. If courts were obligated to apply Frye every time that a scientific expert was called to render an opinion at trial, it would produce "a result that is nothing short of Kafkaesque to contemplate." Trach, 817 A.2d at

10

1110. For that reason, this exclusionary rule of evidence "applies only when a party wishes to introduce *novel* scientific evidence obtained from the conclusions of an expert scientific witness." M.C.M. v. Milton S. Hershey Medical Center of the PA State Univ., 834 A.2d 1155, 1158 (Pa. Super. 2003), *citing* Trach, 817 A.2d at 1108-09 (emphasis in original). To be considered "novel", the scientific evidence "must be something different from 'new' which could be original, striking, unusual or strange." Dengler, *supra*. Furthermore, only the principles and methodology that the expert employs, not the conclusions he reaches, must be generally accepted by scientists in the relevant field. Grady, 839 A.2d at 1045; Trach, 817 A.2d at 1112. In determining whether a particular scientific process is generally accepted, the court must consider whether the proffered evidence stems from "scientific research which has been conducted in a fashion that is generally recognized as being sound, and is not the fanciful creations [*sic*] of a renegade researcher." Trach, 817 A.2d at 1111, *quoting* Blum v. Merrell Dow Pharms., Inc., 564 Pa. 3, 9-10, 764 A.2d 1, 5 (2000) (Cappy, C.J., *dissenting*). *See also* M.C.M., 834 A.2d at 1158-59; Tucker v. Community Medical Center, 833 A.2d 217, 224 (Pa. Super 2003). However, the Frye test does not "require an optimal methodology, just an accepted one." Cassell, 834 A.2d at 1190.

Petitioner contends that the methodology used by Commonwealth's expert is not generally accepted by the fire investigative community. In 2011, the NFPA guidelines were amended. The guidelines state that the negative corpus method is not "consistent with the Scientific method, is inappropriate, and should not be used because it generates un-testable hypothesis." NFPA §18.6.5 (2011 ed.). However,

11

Randy Watson, NFPA chairman, clarified the acceptability of the negative corpus method in 2014 stating:

> That section [in Chapter 8] was title "Inappropriate Use of the Process of Elimination." There was a lot of uproar because people didn't understand the section. They felt we were saying the process of elimination was a bad thing. That's not the case. What we were trying to communicate was that if you misuse the process of elimination, it could be bad. In the new edition, we added some introductory language to address that the process of elimination is an integral part of the scientific method. But if you're making a determination for which you have no evidence to support, that's not consistent with the scientific method. Whatever determination you're going to make in regards to the cause of fire, you have to have evidence to support it.

http://www.nfpa.org/news-and-research/publications/nfpa-journal/2014/march-april-2014/pov/perspectives.

In the instant matter, Trooper Andress testified that he employed a scientific method to eliminate as many competent ignition sources as possible. (N.T. 12/19/2011 at p. 130). Furthermore, Trooper Andress testified that he took into account all of the physical evidence present at the scene of the fire as well as the statements and account of witnesses and trained professionals present at the fire. (N.T. 12/19/2011 at pg. 131). Based upon the totality of the information he obtained, Trooper Andress formed the hypothesis that the fire was ignited by fueled-soaked rags stuffed inside a tire. He conducted a demonstration to test his hypothesis. This methodology hardly resembles the type proscribed by the 2011 NFPA 921. More specifically, the absence of another accidental explanation, his physical inspection of the premises, the eyewitness testimony of Otto Vasquez that he smelled burning rubber and saw the Petitioner near the garage, the ventilation patterns, and line of demarcation following the fire combined to provide Trooper Andress with sufficient

12

criteria to develop his hypothesis. He tested his hypothesis to disprove it and testified as to his findings. Any challenge to his methodology would be directed to the weight of the evidence not its admissibility. Trial counsel subjected Trooper Andress to rigorous cross-examination. Since the claim that trial counsel should have requested a Frye hearing lacks merit and because no prejudice inures to the Petitioner as a result of trial counsel's omission, this Court dismisses this claim.

## C. MOTION TO SUPPRESS PHYSICAL EVIDENCE

Petitioner next claims that trial counsel was ineffective for failing to file a motion to suppress physical evidence obtained at the scene of the fire. Petitioner asserts that Trooper Andress and others' continued visits to the scene in the days and weeks following the fire, and excavation of physical evidence from same, required a search warrant. Petitioner argues that the search of his garage did not come within the fire investigation/exigent circumstances exception as outlined by the United States Supreme Court in Michigan v. Tyler, 436 U.S. 499, 98 S.Ct. 1942 (1978) and Michigan v. Clifford, 464 U.S. 287, 104 S.Ct. 641 (1984).[1] Fourth Amendment proscriptions apply only when the conduct challenged violates an actual expectation of privacy which society is prepared to accept as reasonable. *See* California v. Greenwood, 486 U.S. 35, 108 S.Ct. 1625, 1628 (1988). While the Fourth Amendment is designed to protect people rather than places, the determination of whether an actual and reasonable expectation of privacy exists usually requires some reference to place. Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, (1967). One of the primary sources of a reasonable expectation of privacy is the right

---

[1] Notably, the Petitioner fails to cite Michigan v. Clifford, a formative case as it relates to the warrantless entry of fire affected premises, in his Memorandum.

13

to exclude trespassers from one's private property. *See* <u>Rakas v. Illinois</u>, 439 U.S. 128, 142 n. 12, 99 S.Ct. 421, 430 n. 12 (1978). One's private residence is ordinarily a sanctuary wherein one's reasonable expectations of privacy are exceptionally strong. *See* <u>Payton v. New York</u>, 445 U.S. 573, 587–88, 100 S.Ct. 1371, 1380–81 (1980).

With regard to fire damaged property, the Supreme Court explained in <u>Michigan v. Clifford</u>, *supra:*

> People may go on living in their homes or working in their offices after a fire. Even when that is impossible, private effects often remain on fire damaged premises.' *Privacy expectations will vary with the type of property, the amount of fire damage, the prior and continued use of the property, and in some cases, the owner's efforts to secure it against intruders.* Some fires may be so devastating that no reasonable privacy expectation remains in the ash and ruins, regardless of the owner's subjective expectations. The test essentially is an objective one: whether 'the expectation is one that society is prepared to recognize as "reasonable." ' *If reasonable privacy interests remain in the fire damaged property, the warrant requirement applies, and any official entry must be made pursuant to a warrant in the absence of consent or exigent circumstances.*

464 U.S. at 292–93, 104 S.Ct. at 646, 78 L.Ed.2d at 483. (*Citations omitted, emphasis added*).

In the case *sub judice,* the subject fire damage occurred to the garage of Petitioner's investment property. The exhibits offered at trial demonstrated that following the fire, the garage had become merely a shell of a structure without any sound walls or enclosure to warrant a reasonable expectation of privacy. Petitioner had not taken steps to secure the property by the time the challenged search occurred. Under the standard set forth in <u>Michigan v. Clifford</u>, *supra,* Petitioner had no reasonable privacy expectations in the fire damaged garage or vehicle.

14

The Commonwealth also asserts that the Petitioner had granted law enforcement implied consent to search the premises during the investigation, as a search warrant would only be needed if denied access to the premises. In determining whether consent has been given, the court must look at the totality of the circumstances surrounding the consent to determine if it was voluntary. Schneckloth v. Bustamonte, 412 U.S. 218, 36 L.Ed.2d 854, 93 S.Ct. 2041, 2047 (1973); Commonwealth v. Woods, 240 Pa.Super. 72, 368 A.2d 304 (1976); Commonwealth v. Merbah, 270 Pa.Super. 190, 411 A.2d 244 (1979). Some of the circumstances to be considered in determining voluntariness of consent are whether the accused has assisted in the search, and the education, intelligence and experience of the person giving consent. Commonwealth v. Dressner, 232 Pa.Super. 154, 336 A.2d 414 (1975).

The Petitioner in the instant matter is a former Scranton firefighter. In the days following the fire, Petitioner spoke with the investigators on multiple occasions and attempted to aid in the investigation. In fact, during a search of the property, the Petitioner alerted the investigators as to where he saw smoke and flames on the day of the fire. In addition to being a former firefighter, the Petitioner was a businessman who was under no compulsion when he consented to the search of the premises. By all accounts, the investigators were courteous. There was no evidence that the Petitioner was coerced in any manner. There was nothing to indicate that he would have denied access to the fire officials even if he had known that he did not have to give consent. Based on the foregoing, the evidence produced at trial determined that the Petitioner granted implied consent to the fire investigators. Accordingly, this Court finds no merit in Petitioner's claim that trial counsel was

15

ineffective for failing to move for the suppression of the physical evidence removed from the premises. Therefore, this Court denies this claim.

## D. FINANCIAL CONDITION

Petitioner asserts that trial counsel was ineffective for failing to object to the introduction of evidence regarding his financial condition. At the time of trial, the Commonwealth introduced evidence of a dire financial condition to support their theory that Petitioner committed arson to file an insurance claim. Namely, prosecutors introduced evidence at trial that the property was subject to several mortgages which had gone into default. Furthermore, the jury heard testimony that the Petitioner had filed for bankruptcy, and his petition had been discharged just days prior to the arson.

Any evidence having a tendency to make the existence of any fact that is at issue in a case either more or less probable is relevant, and is admissible unless excluded by law. Pa. R. E. 401, 402. However, any piece of evidence, even if relevant, can be excluded, and is thus inadmissible, if the probative value of that evidence is outweighed by unfair prejudice. Pa. R. E. 403.

With respect to the issue of relevancy, this Court admitted the evidence of the Defendant's financial circumstances because, as was argued by the Commonwealth, it showed the Defendant's potential motive for committing the acts of arson that he was charged with, namely to help himself out of the dire financial situation that he was in. (N.T. 12/14/11 at pg. 47-52). Thus, since evidence of motive is always relevant, this evidence was correctly admitted on relevancy grounds. Comm. v. Ward, 605 A.2d 796, 797 (Pa. 1992).

16

As for the issue of unfair prejudice, it is a long established legal principal that, to be considered unfairly prejudicial, evidence must be so inflammatory that it would drive the jurors to make their decisions based solely on their personal reactions to that specific piece of evidence, and nothing else relevant to the case. Comm. v. Flamer, 53 A.3d 82, 88 (Pa. Super. 2012). In addition, evidence is not unfairly prejudicial simply because it is unfavorable to the defendant's case, and courts are not required to exclude all facts that are "unpleasant" in the eyes of the defendant, especially if they are relevant to an issue in the case. Flamer, 53 A.3d at 88.

Here, as mentioned above, the evidence of the Defendant's financial circumstances was relevant motive evidence. Also, the Defendant has offered nothing to show that this evidence was so overly inflammatory that it led the jurors to convict him based solely on their reactions to it. Thus, this evidence did not unfairly prejudice the Defendant and was correctly admitted. Therefore, because this evidence was properly admitted, the Defendant was not denied a fair trial by its admission, or by the Commonwealth's conduct in mentioning it throughout the trial.

Additionally, with respect to the admission of the Defendant's financial condition, as well as the final two issues presently raised, Defendant is prohibited from utilizing the PCRA process to collaterally attack the disposition of issues previously raised and litigated on direct appeal. 42 Pa. C.S. § 9543(a)(3). An issue has been previously litigated if:

> (2) the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue; or
> (3) it has been raised and decided in a proceeding collaterally attacking the conviction or sentence

17

42 Pa.C.S. § 9544(a)(2)-(3);

The issue regarding the admissibility of the Defendant's financial condition has been previously addressed on direct appeal. As such this Court denies this claim.

## E. PRETRIAL EXPERIMENT AND PROSECUTORIAL DELAY

The Defendant's final issues raised in his PCRA petition pertain to Trooper Andress' Pretrial Experiment[2] as well as the alleged prosecutorial delay in bringing Defendant to trial. To the extent that Defendant claims the pre-trial experiment warranted a cautionary instruction due to the "exaggerated significance" of the test results as well as the failure to file a Motion to Dismiss the Criminal Information due to the alleged prosecutorial delay, these claims have been previously litigated on direct appeal to the Superior Court. Commonwealth v. Johnson, 919 A.2d 289, 290 (Pa.Super. 2006). Commonwealth v. Collins, 888 A.2d at 570 (Pa. 2005)(stating that § *9544(a)(2)* "prevents the relitigation of the same legal ground under alternative theories or allegations"). The Pennsylvania Superior Court ruled on these issues at 2013 WL 11257225 and the Supreme Court denied allocator of the Defendant's claims. *See* 624 Pa. 662 (Pa. 2013). The highest appellate court in which the Defendant could have had review as a matter of right has ruled on the merits of these issues. This comprises the Court's review of any and all claims related to this Court's disposition of the issues related to the pre-trial experiment and alleged prosecutorial delay. Therefore, this Court denies these two (2) claims.

---

[2] Defendant masks the claim asserting ineffectiveness in trial court counsel's failure to seek a cautionary instruction. However, in reviewing the Defendant's filings, it is clear that the substance of Defendant's claim is rooted in the introduction of the pre-trial experiment conducted by Trooper Andress.

18

## VI.  CONCLUSION

In conclusion, the Defendant has not sufficiently proven any of the claims that he has alleged, and he should not be granted any of the PCRA relief that he has requested with respect to any of these claims.

By the Court,

_____ J

Honorable Margaret Bisignani Moyle

19