2012 VT 44

# Rochelle Olio v. Joseph Olio

[54 A.3d 510]

No. 11-310

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed July 6, 2012

*Mary G. Kirkpatrick* of *Kirkpatrick & Goldsborough, PLLC,* South Burlington, for Plaintiff-Appellant.

*Joseph Olio,* Pro Se, Winooski, Defendant-Appellee.

¶ 1. **Robinson, J.** The trial court dismissed wife's post-divorce motion for relief from judgment based on husband's alleged fraudulent concealment of assets without requiring completion of the discovery sought by wife, and without a hearing. We conclude that wife's motion was time-barred and affirm.

¶ 2. Wife and husband entered into a stipulated final divorce agreement, approved and incorporated into a final order by the family court on July 5, 2006. The final stipulation executed by the parties reflects that each was relying on the financial statements prepared by the other and states: "The parties represent that

each has fully described his or her assets and liabilities to the other party to the best of his or her knowledge and ability, as set forth on his or her respective financial statements." The agreement purported to effectuate an equal property division between the parties in its allocation of three parcels of real estate, a pension, a 401(k), multiple bank and investment accounts, and an interest in a promissory note.

¶ 3. Several months after the parties' divorce became final, wife filed a motion to set aside the final divorce decree pursuant to Vermont Rule of Civil Procedure 60(b), made applicable to family proceedings by Vermont Rule for Family Proceedings 4(a)(1), on several grounds, including that husband had not disclosed a bank account. The family court denied the motion, noting that both parties had personal checking accounts opened post-separation from which they paid their bills and neither party had included those accounts in their financial disclosures. The court also concluded that the post-judgment questions raised by wife's motion were relatively minor in the context of the overall case — the account in question had a balance of $10,600 at the time of the final divorce, as compared to a settlement that included $500,000 to be divided in five years, $360,000 in spousal maintenance to be paid over ten years, and three pieces of real estate.

¶ 4. In 2010, husband filed a motion to modify spousal maintenance on account of an unanticipated decline in his income. In the course of a July 6, 2010 hearing in connection with that motion, and after responding to a discovery request to produce statements from all of his bank accounts from January 1, 2009, husband disclosed on cross-examination, for the first time, that he used as his own a bank account listed in his sister's name. Although he initially testified that he had opened that account in 2010, after he had already produced statements in response to wife's discovery requests in connection with his motion to modify, on further questioning husband acknowledged that he had used the account for annual profit-sharing receipts. In light of husband's revelation about the previously undisclosed account, the court continued the hearing on the modification motion and instructed husband to produce the statements from this other account.

¶ 5. At a follow-up hearing on the matter, husband's sister explained that the account in question was a money market account that was part of a constellation of accounts owned by her and her spouse; it was used exclusively by husband, who was

authorized to access the account. Before they invited husband to use the account, she and her spouse did not use it. She and her spouse paid the taxes on the interest associated with the account and then billed husband for the sum paid. Husband's sister could not recall when husband first began using the account, but husband interjected that it was after the July 2006 final divorce, and was "honestly" sometime in 2007. The court asked husband's counsel to find out more specifically, and agreed with wife's suggestion that she obtain the statement for the month preceding the time that husband was added to the account.

¶ 6. Before the conclusion of that hearing, husband's counsel represented, after a call to the bank, that husband had been added to the account on March 21, 2006 — over three months before the final divorce stipulation and decree. Husband argued that the new disclosure of an account that predated the final divorce might have implications for a Rule 60(b) motion, but did not bear on husband's motion to modify. The court ordered husband to produce statements from the account from the months prior to March 21, 2006 and indicated that it would wait to see what motions, if any, wife wanted to file after that.

¶ 7. In August 2010, husband disclosed the money market accounts back to March 2006 — the month he was formally added to the account. The March 2006 statement showed a balance at the beginning of March — *before* husband was formally added to the account on March 21 — of $24,019. This disclosure conflicted with husband's sister's testimony that the account had been unused before husband was given access in light of husband's counsel's representation that husband was added to the account on March 21, 2006. Apparently husband subsequently provided wife a statement for the money market account for the prior month of February 2006; that statement showed a balance of $26,987 at the beginning of February 2006 — again at odds with prior representations and testimony.

¶ 8. Neither the signed affidavit of income and assets husband had provided to wife before they signed the final stipulation in 2006, nor the summary settlement form filed on his behalf with the family court at that time included the undisclosed money market account that nominally belonged to his sister and brother-in-law. Wife has represented, and husband has not disputed, that

the balance in that undisclosed account at the time of the final stipulation and divorce was $56,413.[*]

¶ 9. In August 2010, wife filed a motion for contempt and enforcement requesting that the court order that husband disclose the money market account statements *back to the inception of the account*, before any of husband's money was held therein. She also sought to subpoena the records directly from the bank. In addition, wife filed a motion to reopen the divorce pursuant to Rule 60(b)(6) on the ground that husband had intentionally concealed assets from her, and had perpetrated a fraud upon her and the court.

¶ 10. In November 2010, the trial court granted husband's motion to quash wife's subpoena "pending the court's decision on [wife's] motions to enforce and to reopen." The trial court's entry order also stated: "[husband] to provide the court with a copy of the Feb 2006 . . . money market statement. From pleadings it appears it was provided to plaintiff. When did that account begin with a zero balance attributable to Mr. Olio?"

¶ 11. Then in December 2010, in its entry order granting husband's counsel's motion to withdraw, the trial court instructed: "Mr. Olio to provide the court w/ the balance in the . . . money market acct. as of 3/26/06 when Mr. Olio was added to the account. This information to be provided to the court by 12/31/10." Wife filed a motion to clarify the court's entry order, explaining that husband had already produced the March and February 2006 statements and requesting access to copies of statements from the account back to the time when there was first a positive balance in it — some time to be determined, but prior to the February 2006 statement. Around the same time, husband filed an affidavit under oath asserting that the monies in the money market account as of the beginning of February 2006 were funds that he had borrowed from family and were subject to repayment.

¶ 12. The trial court returned to this matter in August 2011 when it issued a ruling disposing of various outstanding motions. With respect to the motion to clarify, the court indicated that it simply sought the account statements that the parties already

---

[*] Husband's counsel has represented that the lion's share of this sum derived from a profit-sharing payment to husband in March 2006 that was duly disclosed to wife. Because we conclude that wife's Rule 60(b) motion is untimely, we do not address the competing suspicions and explanations concerning the genesis of these undisclosed funds.

had, and there was nothing to clarify. With respect to wife's August 2010 motion for contempt and enforcement, the court concluded that husband had produced what he was ordered to produce and therefore denied the motion. The court did not refer to its prior November 2010 entry order asking when the account began with a zero balance. With respect to wife's Rule 60(b) motion, the trial court concluded that the motion was time-barred pursuant to 60(b)(3), and did not qualify for consideration pursuant to 60(b)(6). The court also ruled, as an apparent alternate basis for its dismissal of wife's motion, that she could not show any of the necessary elements to establish that husband engaged in fraud at the time the parties signed their final stipulation. Finally, the court denied the request for a hearing on the Rule 60(b) motion.

¶ 13. On appeal, wife challenges the trial court's refusal to hold a hearing on her Rule 60(b)(6) motion, and its refusal to allow her to seek additional discovery; she also argues that the trial court erred by not ruling that husband's concealment of assets was a fraud upon the trial court.

¶ 14. Although wife does not directly challenge the trial court's ultimate ruling on her Rule 60(b) motion, the starting point for our analysis is the motion itself. We have quite recently considered whether a party can invoke Rule 60(b)(6), which is not subject to a time limit, when the alleged ground for relief falls squarely within a different, time-limited subsection of Rule 60(b). In *Pierce v Vaughan*, we acknowledged that Rule 60(b)(6) is to be liberally construed to prevent hardship or injustice, but held that it is not intended to be used as a substitute for one of the first five subsections of Rule 60(b). 2012 VT 5, ¶ 10, 191 Vt. 607, 44 A.3d 758 (mem.). Accordingly, we reiterated our view that "[r]elief under V.R.C.P. 60(b)(6) is available only when a ground justifying relief is not encompassed within any of the first five classes of the rule." *Id.* (quotation omitted). Otherwise, Rule 60(b)(6) would serve as a "backdoor" to circumvent the one-year time limit in subsections (b)(1)-(3). *Id.*

¶ 15. In *Pierce*, we considered a purported Rule 60(b)(6) motion that rested on bases falling most naturally within subsection 60(b)(1), covering "mistake, inadvertence, surprise, or excusable neglect," *id.* ¶ 11, but we have similarly declined to evaluate Rule 60(b) motions sounding in fraud under 60(b)(6) rather than the time-limited 60(b)(3), see, e.g., *Perrott v. Johnston*, 151 Vt. 464,

466, 562 A.2d 459, 460-61 (1989) (refusing to consider motion for relief from judgment based on alleged submission of false appraisal to court pursuant to Rule 60(b)(6) because the allegation of fraud on the court fell within Rule 60(b)(3) and was therefore subject to the one-year time limit).

¶ 16. In this case, wife's motion is clearly predicated on allegations of fraud in the underlying divorce; indeed, on appeal, she argues that the trial court erred by failing to make a finding that husband engaged in a fraud. Pursuant to the principles we recently reaffirmed in *Pierce*, wife's motion to set aside the judgment on account of husband's nondisclosure of assets is accordingly subject to the one-year time limit in Rule 60(b)(3).

¶ 17. Wife argues that the trial court should have entertained her motion under 60(b)(6) because it alleged a fraud, not only against her, but on the court. In *Godin v. Godin*, we recognized a narrow exception to the above rule for certain motions for relief from judgment alleging egregious fraud on the court in the underlying judgment. 168 Vt. 514, 518-20, 725 A.2d 904, 907-08 (1998). Our recognition was based in part on a United States Supreme Court decision in which the Court set aside a judgment pursuant to Rule 60(b)(6) where a lawyer had fabricated an article, claimed it was authored by a former union president, and then used the falsified article in a patent case before an appellate court to receive a favorable judgment. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944). In that case, the Court described the lawyer's actions as "a wrong against the institutions set up to protect and safeguard the public," *id.* at 246, and concluded that the "deliberately planned and carefully executed scheme to defraud not only the Patent Office but the Circuit Court of Appeals" warranted the Court's exercise of its equitable powers to set aside the "fraudulently begotten judgment," *id.* at 245-46.

¶ 18. Though we recognized in *Godin* an exception to the general rule that a Rule 60(b) motion predicated on fraud is subject to the one-year time limit of 60(b)(3), we took pains to emphasize the narrowness of that exception. We noted that "courts and commentators alike have observed that the fraud-on-the-court doctrine must be narrowly applied, or it would become indistinguishable from ordinary fraud, and undermine the important policy favoring finality of judgments." 168 Vt. at 518, 725 A.2d

at 907. We specifically distinguished between cases involving witnesses who, on the basis of after-discovered evidence, are believed to have been guilty of perjury, and those involving the kind of wrong described by the United States Supreme Court in the *Hazel-Atlas Glass* case. And we quoted approvingly from Moore's Federal Practice:

> If fraud on the court were to be given a broad interpretation that encompassed virtually all forms of fraudulent misconduct between the parties, judgments would never be final and the time limitations of Rule 60(b) would be meaningless.

*Id.* at 518-19, 725 A.2d at 907-08.

¶ 19. For these reasons, we agreed that "[a] finding of fraud on the court is justified only by the most egregious misconduct directed to the court itself, such as . . . fabrication of evidence by counsel, and must be supported by clear, unequivocal and convincing evidence." *Id.* at 519, 725 A.2d at 908 (quotations omitted). We concluded that the alleged misrepresentation in that case — a wife's failure to disclose to her husband over a period of years and throughout the divorce proceeding that the child he had raised as presumptively his was not actually his biological child — did not approach the kind of "calculated, egregious 'defiling' of the adjudicative process that has traditionally characterized fraud on the court." *Id.* at 520, 725 A.2d at 908.

¶ 20. Rochelle's allegation in this case — that husband engaged in a deliberate attempt to conceal a substantial bank account from her prior to their final stipulation and divorce order, and that he made affirmative misrepresentations to her and to the court in the course of doing so — falls on the "ordinary fraud" side of the boundary and does not qualify for the narrow exception we recognized in *Godin*. For that reason, the trial court did not err in declining to rule that husband engaged in a "fraud on the court," as we have defined that term for the purpose of assessing whether a motion falls within the narrow exception to the general one-year time bar for motions for relief based on fraud.

¶ 21. Because wife's motion is time-barred as a matter of law, the trial court did not abuse its discretion in refusing to allow further discovery in connection with the motion, and in declining

to hold a hearing on the motion. *Altman v. Altman,* 169 Vt. 562, 564, 730 A.2d 583, 586 (1999) (mem.) (trial court did not abuse discretion in denying Rule 60(b) motion without a hearing where denial was premised on undisputed material facts).

¶ 22. We understand that this holding may lead to arguably unfair results in cases where a successfully concealed fraud cannot be remedied under Rule 60(b)(3) after the judgment is in place for more than one year. The misrepresentation alleged by wife in this case is not trivial, even in the context of the parties' overall divorce agreement. We do not intend to suggest by our ruling that litigants can lie with impunity as long as their misdeeds go undetected for a year. In some cases, a litigant's conduct may constitute the type of egregious fraud against the court that triggers the exception recognized in *Godin.* In addition, nothing in the rule precludes criminal consequences for perjury. See 13 V.S.A. § 2901. In crafting our approach to such cases, we have struck a balance between the competing imperatives of finality of judgments, on the one hand, and justice in every case on the other. *Godin,* 168 Vt. at 520, 725 A.2d at 908. In this case, based on the longstanding requirements of the Vermont Rules of Civil Procedure and our case law interpreting those rules, our solicitude for finality must trump.

*Affirmed.*