NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 29

No. 23-AP-326

| | |
|---|---|
| Aerie Point Holdings, LLC | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Addison Unit, |
| | Civil Division |
| | |
| Vorsteveld Farm, LLC | April Term, 2024 |

Mary Miles Teachout, J.

Merrill E. Bent of Woolmington, Campbell, Bent & Stasny, P.C., Manchester Center,
 for Plaintiff-Appellee.

Claudine C. Safar of Monaghan Safar PLLC, Burlington, for Defendant-Appellant.


PRESENT: Reiber, C.J., Eaton, Carroll and Waples, JJ., and Tomasi, Supr. J.,
Specially Assigned


¶ 1.    **CARROLL, J.**  Defendant Vorsteveld Farm, LLC (Vorsteveld) appeals an order denying its motion for relief from judgment under Vermont Rule of Civil Procedure 60(b). We affirm.

## I. Background

¶ 2.    The record reflects the following. Plaintiff Aerie Point Holdings, LLC (Aerie Point) owns real property consisting of 108 acres of grassland and thirty acres of woodland in Panton, Vermont. It abuts Lake Champlain to the west and its upslope neighbor Vorsteveld to the east. Arnold Bay Road runs roughly north to south between the two properties.

¶ 3.     Vorsteveld operates a large dairy farm.  Beginning in 2017, Vorsteveld began installing tile drains in some of its fields.  The purpose of tile drains is to improve soil quality by lowering the water table and "draining" water from the land, which allows crops to grow more efficiently in heavy soils.  Tile drains reduce the amount of water in croplands by ten to twenty-five percent.  Tile drains are perforated, four-inch plastic pipes buried three-feet deep and spaced about twenty-five feet apart.  The excess water drained by the tiles is discharged from eight-inch outlets at the edge of a field.  Each discharge point drains thirty-five acres of land and nine miles of piping.  During a storm, water comes out of the discharge point at high velocity.  Eventually, Vorsteveld installed 119 miles of tile drains that drained approximately 250 acres of fields.

¶ 4.     The water discharged from the drain-tile system is directed into public ditches running along Arnold Bay Road, then through culverts under Arnold Bay Road, and finally toward the lake over Aerie Point's property in two different streambeds.  One streambed flows over the northerly portion of Aerie Point's property and one flows over the southerly portion.  Before the installation of the Vorsteveld tile drains, these streambeds were shallow, narrow, and ephemeral.  They have since become wider and deeper and flow year-round.  Sediment and particles carried by the water have increased phosphorous and E. coli concentrations in Aerie Point's farm pond and have caused algae blooms in the lake.

¶ 5.     In April 2020, Aerie Point filed suit against Vorsteveld asserting claims of trespass and nuisance.  Aerie Point alleged that Vorsteveld had caused an increase in the amount of water flowing over Aerie Point's land, sediment and contaminants in the water caused shoreline erosion and algae blooms in Lake Champlain, and Vorsteveld's manure-handling practices created offensive odors that interfered with Aerie Point's use and enjoyment of its property.

¶ 6.     In March 2022, the civil division issued a decision on Aerie Point's complaint after a bench trial.  It found that Aerie Point proved its claims of trespass and nuisance and concluded that Aerie Point was entitled to injunctive relief.  The court issued an order in August 2022

2

awarding injunctive relief as to excess-water discharge and manure odor and entered final judgment. The injunction relating to excess-water discharge provides: "[Vorsteveld] is enjoined from allowing water, and any particles it carries, from flowing from the discharge points of Defendant's drain tile system into the public ditches and culverts westerly of Defendant's land on Arnold Bay Road between Adams Ferry Road and Pease Road."[1] Vorsteveld did not timely appeal the final judgment. See Aerie Point Holdings LLC v. Vorsteveld Farm LLC, No. 22-AP-279, 2023 WL 2867097, *3 (Vt. April 7, 2023) (unpub. mem.) [https://perma.cc/VM6Z-ZHV5].

¶ 7.     In August 2023, Vorsteveld moved for relief from judgment under Rule 60(b)(5) and (6). Vorsteveld contended that several postjudgment changes in fact and law justified relief from the injunction relating to excess water and requested a hearing on the motion. It asserted that an Environmental Protection Agency (EPA) investigation regarding filled wetlands on the farm prevented it from complying with the injunction, and the federal investigation/enforcement action[2] preempted the state injunction even if Vorsteveld could stop water from flowing onto Aerie Point land. It argued that any measure it could take to prevent water runoff would be expensive, impractical, and unsustainable; and supported this contention with expert-witness affidavits. Vorsteveld asserted that Aerie Point no longer grazed animals on its land, so Aerie Point no longer suffered harm from excess-water discharge. It argued that the previous effects of erosion had been resolved in certain places on Aerie Point's land and sought a site visit from the court to verify the improvements for itself. Finally, it asserted that a postjudgment change in Vermont's so-called

---

[1] Vorsteveld does not challenge the odor injunction in this appeal.

[2] Vorsteveld uses these terms interchangeably. In June 2022, EPA's senior enforcement counsel referred to its involvement as "investigation." In August 2023, EPA characterized its involvement as an "enforcement action." The difference between an investigation and an enforcement action appears to be significant, the latter of which is brought under Section 309 of the Clean Water Act, 33 U.S.C. § 1319, and can result in civil penalties and/or injunctive relief. For purposes of this opinion, we use "investigation" for EPA's involvement prior to the August 2023 letter, and "enforcement action" thereafter.

3

Right-to-Farm law, Chapter 195 of Title 12, effectively held Vorsteveld to a higher standard of farming practices than other Vermont farms. The 2022 changes to the law added "subsurface drainage of farm fields" and "irrigation and drainage systems" to the list of "agricultural activities" that can raise a rebuttable presumption in favor of a farm against a nuisance cause of action.

¶ 8. The court made the following findings. Vorsteveld was aware of the EPA investigation at trial and it therefore did not constitute a postjudgment change in factual circumstances. Vorsteveld's representations concerning its ability to comply with the injunction and the enforcement action were unsupported and conclusory, including its assertion that the enforcement action preempted the injunction. Vorsteveld failed to support its contention that "no strategy would be able to satisfy both the injunction and the EPA." Experts retained by Vorsteveld failed to support what the court termed "general conclusion[s]" about why compliance measures were expensive and impractical. Vorsteveld's representations of the conditions on Aerie Point's land ignored or misunderstood the court's March 2022 findings that excess water discharge affected Aerie Point in multiple ways, and recovery on some parts of its land did not mean that the entire problem of water runoff was resolved. The cost of complying with the injunction was not a valid consideration because "an injunction is justified if continuation of the offending party's conduct is harmful to the plaintiff." Finally, Vorsteveld's argument about the change to the statutory framework would not create a rebuttable presumption in Vorsteveld's favor because the basis of the court's merits order did not fault Vorsteveld for using a subsurface drainage system, and Vorsteveld could not satisfy other necessary elements required to invoke the presumption. Based on these findings, the court denied the motion and the request for an evidentiary hearing. This appeal followed.

¶ 9. Vorsteveld's arguments can be sorted into four categories. First, Vorsteveld asserts that the civil division abused its discretion in concluding that Vorsteveld failed to support its contention that it cannot stop "all" water and sediment from flowing "naturally" downslope over

4

Aerie Point, making compliance with the injunction impossible. Vorsteveld argues that the civil division did not intend to drive the Vorstevelds out of business by requiring it to undertake expensive and onerous measures to stop "all" water and sediment from flowing over Aerie Point's land. Second, Vorsteveld raises several arguments relating to EPA's enforcement action, including that Vorsteveld is unable to comply with that enforcement action and the injunction at the same time, and that the enforcement action preempts the injunction. Third, it contends that the amendments to the Right-to-Farm law are alternative grounds for relief as postjudgment changes in law. Fourth, it asserts that based on these arguments, it was an abuse of discretion for the court to deny its request for an evidentiary hearing because the court needed more information before it could permissibly reach a decision on the motion for relief from judgment. Vorsteveld seeks a reversal of the trial court's order and a remand for further proceedings, including an evidentiary hearing.

## II. Argument

### A. Standard of Review

¶ 10. "The trial court has discretion when ruling on a motion for relief from judgment under Rule 60(b)." Sandgate Sch. Dist. v. Cate, 2005 VT 88, ¶ 6, 178 Vt. 625, 883 A.2d 774 (mem.). "Absent a clear and affirmative abuse of discretion, a motion for relief from judgment will not be disturbed on appeal." Id.

### B. Rule 60(b)(5), (6)

¶ 11. Rule 60(b) grants courts the power to "relieve a party . . . from a final judgment, order, or proceeding" for six enumerated reasons. Rule 60(b)(5) provides relief to a party when "the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application." The movant must show that significant postjudgment changes in factual circumstances or the law make prospective application of an injunction or consent decree

5

inequitable and not merely inconvenient.  J.L. v. Miller, 158 Vt. 601, 604, 614 A.2d 808, 810 (1992) (citing Rufo v. Inmates of Suffolk Cty. Jail, 502 U.S. 367, 384 (1992)).  Rule 60(b)(5) "is not a substitute for an appeal," and "[i]t does not allow relitigation of issues that have been resolved by the judgment."  11 C. Wright, et al., Fed. Prac. & Proc. (Wright & Miller) § 2863 (3d ed. 2023).  Prevailing under Rule 60(b)(5) requires a "strong showing," "particularly when the court finds that the changed circumstances were contemplated at the time the decree was entered."  Id.; see also Thompson v. U.S. Dep't of Hous. & Urban Dev., 220 F.3d 241, 248 (4th Cir. 2000) ("A modification . . . must be based on a change in facts, not a change in opinion about the effect of unchanged facts.").

¶ 12.    Rule 60(b)(6) may relieve a party from a judgment for "any other reason justifying relief from the operation of the judgment."  "Under Rule 60(b)(6), a motion for relief from judgment may be granted only in extraordinary circumstances to prevent hardship or injustice."  Wilson v. Wilson, 2011 VT 133, ¶ 5, 191 Vt. 560, 38 A.3d 50 (mem.) (quotation omitted).  While the rule should "be liberally construed to prevent hardship or injustice," Olio v. Olio, 2012 VT 44, ¶ 14, 192 Vt. 41, 54 A.3d 510, it "does not protect a party from tactical decisions which in retrospect may seem ill-advised. And it is not an open invitation to reconsider matters concluded at trial."  Rule v. Tobin, 168 Vt. 166, 174, 719 A.2d 869, 874 (1998) (citation and quotation omitted).  A party cannot use Rule 60(b) as a substitute for direct appeal.  See Riehle v. Tudhope, 171 Vt. 626, 627, 765 A.2d 885, 887 (2000) (mem.); see also Penland v. Warren, 2018 VT 70, ¶ 7, 208 Vt. 15, 194 A.3d 755.

### C.  Compliance with Injunction

¶ 13.    We turn first to Vorsteveld's argument that it cannot comply with the water-runoff injunction and is entitled to relief from the judgment under Rule 60(b).  Vorsteveld contends that being enjoined from sending "any" water over Aerie Point is "absurd" and "went far above and beyond the court's" March 2022 findings.  Vorsteveld, in effect, contends both that it cannot

6

comply with the injunction as a practical matter due to cost and inconvenience, and that the court did not intend to enjoin "all" water from reaching Aerie Point. Vorsteveld argues the injunction is impossible to comply with because Aerie Point lies downhill from Vorsteveld, and any water that falls on Vorsteveld tends to flow downhill toward the lake over Aerie Point via the tile drains or otherwise. We conclude that in making these arguments, Vorsteveld seeks to relitigate "issues that have been resolved by the judgment." 11 Wright, supra, § 2863 (stating that Rule 60(b)(5) "does not allow relitigation of issues that have been resolved by the judgment.").

¶ 14. Vorsteveld did not file a timely direct appeal of the court's injunction, nor did it move the court to alter or amend the judgment under Vermont Rule of Civil Procedure 59 in lieu of a direct appeal. See Reporter's Notes, V.R.C.P. 59 ("Rule 59(e) gives the court broad power to alter or amend a judgment on motion."). These omissions alone render Vorsteveld's arguments about its inability to comply with the injunction, at this juncture, unavailing under either Rule 60(b)(5) or (6). Vorsteveld cannot substitute a Rule 60(b) motion for an appeal. Riehle, 171 Vt. at 627, 765 A.2d at 887.

¶ 15. However, even if the merits were properly before us, we observe that Vorsteveld raised no objection to the proposed injunction issued by the trial court in May 2022, which the court ultimately adopted for final judgment verbatim in August 2022. Indeed, the May 2022 order specifically stated:

> As [Vorsteveld] has pointed out, an order of injunction should be specific and narrowly tailored and clearly identify what is enjoined. Therefore as to the issue of water and sediment, the injunction shall preclude [Vorsteveld] from allowing water that arrives at the discharge points in the tile drain system from being discharged into the ditches in order to divert it from proceeding through the culverts and on to [Aerie Point's] land. This will prevent the water removed through the use of tile drains, and the particles and sediment it carries, from entering [Aerie Point's] land and causing damage, but still allow water that falls on the fields and is not removed through the tile drainage system to drain naturally by seeping through the soil and into the ditches and culverts to the two streambeds that cross [Aerie Point's] land on the way to Lake Champlain.

7

Vorsteveld was on notice that the court had proposed only to enjoin water from the tile-drain discharge points from reaching Aerie Point, not all water from Vorsteveld's land, as it contends on appeal.

¶ 16. Accordingly, Vorsteveld's arguments that the injunction was "absurd" and "went far and above the court's" March 2022 findings is without basis. The injunction states precisely what the court said it intended to do: enjoin water from the tile-drain system from trespassing onto Aerie Point's land. Vorsteveld did not alert the court that it took issue with the injunction and the rationale underlying it before the court entered final judgment, or afterwards in a Rule 59 motion. The court was not required to revise the injunction in the absence of an objection by Vorsteveld.[3]

¶ 17. Vorsteveld also contends that the true cost of compliance has only come to light after final judgment, which warrants relief under Rule 60(b)(5), and that the cost will result in "severe hardship and clear injustice" under Rule 60(b)(6). Again, Vorsteveld failed to appeal the injunction, and this argument is an attempt to relitigate an issue resolved in the final judgment. See Riehle, 171 Vt. at 627, 765 A.2d at 887. Yet, even assuming that other options to mitigate or stop excess water do not exist—which the trial court did not find[4]—Vorsteveld's assertion that the mitigation measures are too costly is not, without more, an appropriate ground for relief at this stage under either Rule 60(b)(5) or (6). See Miller, 158 Vt. at 604, 614 A.2d at 810 ("Rule 60(b)(5) provides relief when continued enforcement" of injunctive remedy "would be inequitable, not merely inconvenient").

---

[3] We note that the court expressly took both Aerie Point's proposed injunction and Vorsteveld's opposition into account in its May 2022 order. The court's injunction is more narrowly tailored than that proposed by Aerie Point because it specifically targets the source of the trespass—the tile-drain discharge points—not water in general, as Aerie Point had proposed.

[4] The trial court discussed various measures on which Aerie Point's expert opined and stated that "the Vorstevelds are not enthused" about the expert's recommendations. We take no position on the relative merits of the proposed alternative measures; we merely note that the court took evidence on other options than those proffered by Vorsteveld.

¶ 18.     Vorsteveld anticipated at the time of final judgment that compliance would be costly.  See Thompson, 220 F.3d at 247 ("A modification . . . must be based on a change in facts, not a change in opinion about the effect of unchanged facts.").  It is well-established in the federal system that modification of a judgment under Rule 60(b)(5) "should not be granted where a party relies upon events that actually were anticipated at the time" the judgment was entered.  Rufo, 502 U.S. at 385; see Coles v. Coles, 2013 VT 36, ¶ 6, 193 V. 605, 73 A.3d 681 (citing rule that Supreme Court looks to federal cases when analyzing Vermont rule that is identical to its federal counterpart).

¶ 19.     Thompson is instructive.  There, Baltimore public-housing residents entered into a consent decree with the Baltimore public-housing system following the residents' class-action suit alleging that the public-housing system was racially segregated.  At the time the parties entered into the consent decree, it was known that the public-housing properties subject to the decree were in a dilapidated state, but the defendants would rehabilitate them using funds from the Department of Housing and Urban Development.  Following entry of the decree, the defendants commissioned a study that ultimately questioned the viability and marketability of each property.  Changing course based on the study, the defendants sought modification of the decree to instead demolish the properties and build facilities not exclusively dedicated to public housing.  The district court agreed with the defendants and modified the decree accordingly.

¶ 20.     The Fourth Circuit reversed.  It held that "[t]he changed circumstances upon which the [defendants] based their requested modification were contemplated at the time they entered into the Consent Decree, and the [defendants] failed to establish that they made a reasonable effort to comply with" the decree.  Thompson, 220 F.3d at 248.  Those purported changed circumstances included the need for extensive repairs to the properties, and the costs involved in making those repairs.  The Fourth Circuit explained that a "modification of a consent decree must be based on a change in facts, not a change in opinion about the effect of unchanged facts."  Id. at 247; see also

9

United States v. Asarco Inc., 430 F.3d 972, 980 (9th Cir. 2005) (holding that mining companies anticipated that EPA would superfund river basin at time they entered into consent decree with United States where decree expressly reserved right for United States to exercise remedial authority under statute).

¶ 21. Here, in its opposition to Aerie Point's proposed injunction, Vorsteveld stressed the "magnitude of the expense" of "captur[ing], stor[ing], and dispos[ing] of rainwater that lands on [Vorsteveld's] property and flows through the drain tile, over the surface of [Vorsteveld's] property, through the Panton town culverts . . . and onto [Aerie Point's] land." It continued:

> If [Vorsteveld] is commanded by this [c]ourt to capture and dispose of such massive quantities of water, it will have to engage in significant planning, engage contractors to design and construct some massive water storage structure, confront practical problems such as where to locate such a structure to trap water after it comes out of the tile and before it reaches [Aerie Point's] property, and find some method of disposing of the massive amounts of water to be stored. The undersigned is not aware of any commercial service or other means which would be available for [Vorsteveld] to remove such massive quantities of water from its property. If this [c]ourt is going to saddle [Vorsteveld] with these costs and difficulties, it should do so only after balancing the relative hardships to the parties and determining [Aerie Point's] injury is truly so great as to warrant severe and possibly-crippling financial harm to [Vorsteveld].

Like the defendants in Thompson, Vorsteveld knew or should have known that compliance with the injunction would be costly when the court entered final judgment. The facts remain unchanged in the record before us, and they do not justify, as the trial court stated, "modification or elimination of the injunctive remedy" under Rule 60(b)(5).

¶ 22. Ultimately, Vorsteveld seeks to relitigate issues relating to the injunction that were decided at trial and in posttrial proceedings and has not demonstrated that there is a significant change in postjudgment factual circumstances.[5] Therefore, the court did not abuse its discretion

---

[5] To the extent Vorsteveld intends to appeal the trial court's conclusion that "the court does not balance the equities between the parties in a manner that allows considerations of expense to the offending party to override the need for a remedy to the harmed party," it has waived this

in denying the Rule 60(b) motion. See 11 Wright, supra, § 2863(explaining that prevailing under Rule 60(b)(5) requires a "strong showing," "particularly when the court finds that the changed circumstances were contemplated at the time the decree was entered"); Riehle, 171 Vt. at 627, 765 A.2d at 887 (explaining that Rule 60(b)(6) not intended to provide alternate means for direct appeal).

## D. EPA Investigation

¶ 23. We turn next to Vorsteveld's arguments relating to the EPA enforcement action. Vorsteveld contends that the enforcement action is a postjudgment change in factual and legal circumstances requiring modification or elimination of the injunction. Vorsteveld concedes that the "EPA began to investigate an alleged violation prior to trial and through final judgment." However, it asserts that the EPA "communicated a continued assertion of jurisdiction" on August 10, 2023, following a period of uncertainty after the U.S. Supreme Court issued its decision in Sackett v. EPA, 598 U.S. 651 (2023). Vorsteveld contends that, taken together, this August 2023 communication and the work Vorsteveld's experts have done to comply with the enforcement action constitute postjudgment changes in factual and legal circumstances making prospective enforcement of the injunction inequitable. We are not persuaded.

¶ 24. In early December 2021, before the trial had ended, Vorsteveld learned that the EPA was investigating a possible violation of the Clean Water Act committed on Vorsteveld's land. In a letter to Vorsteveld's counsel dated June 24, 2022, the EPA stated the following: "As you are aware, [the EPA] has been conducting an investigation to determine whether wetlands on the Farm were filled in violation of Section 404 of the [Clean Water] Act, 33 U.S.C. § 1344, and a separate investigation to determine whether there are violations of the CWA regulations

---

argument. See Nesti v. Vt. Agency of Trans., 2023 VT 1, ¶ 22, __ Vt. __, 296 A.3d 729 (explaining that failure to assign error to trial court ruling results in waiver of argument on appeal); V.R.A.P. 28(a)(3) (requiring appellants to provide "specific claims of error").

applicable to Concentrated Animal Feeding Operations (CAFOs)." Vorsteveld knew that the EPA had demanded more information about Vorsteveld's installation of tile drains, including the "approximate areas drained by each outfall." Accordingly, Vorsteveld was aware that the EPA might initiate an enforcement action, and the basis for such an action, before the trial concluded. Moreover, it knew about the EPA investigation at the time of the court's March 2022 decision and during the significant motion practice to determine the injunction language leading up the trial court's August 2022 final judgment. Yet Vorsteveld never disclosed the situation.

¶ 25.    The Fourth Circuit's explanation in Thompson that Rule 60(b)(5) relief "must be based on a change in facts, not a change in opinion about the effect of unchanged facts" applies here. 220 F.3d at 247. Vorsteveld knew or should have known that the subject matter of the trial and the resulting injunctive relief overlapped in significant ways with the EPA investigation. The possibility that the investigation would ultimately ripen into a full-blown enforcement action was foreseeable at the time of final judgment. Vorsteveld must live with its failure to disclose the EPA's involvement to the trial court; neither Rule 60(b)(5) or (6) relief is available on this basis. Id.; Tobin, 168 Vt. at 174, 719 A.2d at 874 (stating that Rule 60(b) does not protect party from ill-advised tactical decisions).

¶ 26.    Vorsteveld next contends that it cannot comply with EPA's enforcement action and the injunction simultaneously. This argument fails because the record is bereft of a finalized settlement agreement with the EPA and Vorsteveld has offered no reason why compliance with each would be impossible.[6] Vorsteveld submitted an affidavit by one of its experts opining that a proposed "mitigation plan to address the EPA's" allegation that Vorsteveld filled a wetland, "involves investigating modification to . . . [the] tile drainage system to possibly include multiple

---

[6] Vorsteveld's counsel represented at oral argument that a final settlement had been reached with the EPA. However, that representation alone is insufficient to change the outcome here. In any event, Vorsteveld would need to present that agreement to the trial court in the first instance.

12

discharge points into the mitigation site." The expert continued, "[e]ven with this mitigation plan in place, water discharging from the tile drain system would still reach a ditch along Arnold Bay Road, although it would first pass through the newly created wetland." The court did not misunderstand this explanation, as Vorsteveld asserts on appeal. Rather, the court considered it as evidence "that some possible proposals for compliance with EPA enforcement could be compatible with the injunction." We take the trial court at its word that aspects of Vorsteveld's proposed modification plan indicate that Vorsteveld <u>could</u> comply with the injunction and a wetland-restoration project. It follows that Vorsteveld has not demonstrated that compliance with both is impossible.

¶ 27. Vorsteveld's argument fails for another, equally fatal reason: it is premature. The record contains no indication that Vorsteveld has reached a binding settlement with the EPA. Without evidence of that, this Court and the trial court are left to speculate about what Vorsteveld may need to do to satisfy the EPA's concerns. We agree with the trial court that "[t]here is simply a lack of evidence to support a conclusion that the existence of the EPA enforcement action is a postjudgment event that calls for modification or elimination of the injunction." The lack of evidence on this question makes Rule 60(b)(5) and (6) inapplicable because it is not possible to determine whether prospective application of the injunction is now inequitable or whether there are extraordinary circumstances giving rise to hardship and severe injustice. See <u>Wilson</u>, 2011 VT 133, ¶ 5.

¶ 28. Vorsteveld's final assertion relating to EPA involvement is that the enforcement action preempts the state injunction. <u>Grice v. Vt. Elec. Power Co.</u>, 2008 VT 64, ¶ 15, 184 Vt. 132, 956 A.2d 561 ("A federal law implicitly preempts state law . . . through conflict preemption[] where . . . state law actually conflicts with federal law."). As an initial matter, Vorsteveld's argument is undermined because it failed to raise a preemption defense at trial. See <u>Glover v. Bausch & Lomb Inc.</u>, 6 F.4th 229, 236 n.3 (2d Cir. 2021) (explaining that federal preemption is

affirmative defense); see also N. Sec. Ins. Co. v. Mitec Elecs., Ltd., 2008 VT 96, ¶ 38, 184 Vt. 303, 965 A.2d 447 (holding that Vermont Rule of Civil Procedure 15 provides avenue to amend pleadings prior to final judgment and that courts are to liberally permit amendment where claims or defenses were "unknown earlier in the proceedings"). Moreover, Vorsteveld cites no case standing for the proposition that an EPA investigation or enforcement action alone preempts a state injunction. Vorsteveld may have a future preemption claim if it can demonstrate that it has executed a final, binding agreement with the EPA, or if the EPA obtains a judgment against Vorsteveld, but not before that point.[7] See In re Verizon New Eng., Inc., 173 Vt. 327, 336, 795 A.2d 1196, 1203 (2002) ("State law will be preempted when there is an actual conflict with federal law, but there is no actual conflict where a collision between two regulatory schemes is not inevitable." (quotation omitted)); P.R. Dep't of Consumer Affs. v. Isla Petroleum Corp., 485 U.S. 495, 501, 503 (1988) ("There is no federal preemption in vacuo, without a constitutional text or a federal statute to assert it," and "unenacted approvals, beliefs, and desires are not laws."). We express no opinion on the viability of such a future claim, nor any opinion on the EPA's power to enforce the Clean Water Act.

---

[7] Vorsteveld cites International Paper Co. v. Ouellette, 479 U.S. 481 (1987), for the proposition that the Clean Water Act preempts this injunction. Ouellette is not like this case at all except for the fact that it dealt with the preemptive effect of the Clean Water Act in relation to a state common-law nuisance claim involving Lake Champlain. Instead, in Ouelette the U.S. Supreme Court held that the Clean Water Act preempted a Vermont common-law nuisance claim because that claim purported to impose liability on a New York-sited point-source polluter in Lake Champlain. Id. at 495-97. The Vermont claim was preempted because Congress intended the Act to "establish an all-encompassing program of water pollution regulation," and that "if affected States [like Vermont] were allowed to impose separate discharge standards on a[n out-of-state] single point source, the inevitable result would be a serious interference with the achievement of the full purposes and objectives of Congress." Id. at 492-93 (quotations omitted). However, as the high court made clear, the Clean Water Act does not preclude "aggrieved individuals from bringing a nuisance claim pursuant to the law of the source State." Id. at 497. That is exactly what Aerie Point has done here, in addition to bringing a common-law trespass claim, and nothing about this dispute involves questions of interstate-pollution liability.

¶ 29. Therefore, the trial court did not abuse its discretion in concluding that Vorsteveld's arguments relating to EPA involvement were insufficient to merit relief under Rule 60(b).

### E. Right-to-Farm Law

¶ 30. Vorsteveld next contends that changes to Vermont's Right-to-Farm law since final judgment justify modification or vacation of the injunction. This argument is without merit.

¶ 31. The Right-to-Farm law, 12 V.S.A. §§ 5751-54, outlines four necessary elements which, if met, give rise to a rebuttable presumption that an "agricultural activity" does not constitute a nuisance: (A) the activity is conducted in a legal manner; (B) the activity is consistent with "good agricultural practices"; (C) the activity is established before the surrounding nonagricultural activities; and (D) the activity has not significantly changed since the surrounding nonagricultural activities have commenced. 12 V.S.A. § 5753(a)(1). In its March 2022 final order, the trial court found that Vorsteveld did not meet conditions A, C, and D, and therefore was not entitled to the benefit of the presumption that its activities did not constitute a nuisance.

¶ 32. In June 2022, after the court issued its final order, the Legislature amended the Right-to-Farm law to adopt the definitions of "agricultural activity" set forth in 6 V.S.A. § 4802, which defines terms used in Chapter 215 of Title 6 relating to agricultural water quality. See 12 V.S.A. § 5752(4); 2021, No. 162 (Adj. Sess.), § 12. At the same time, the Legislature amended § 4802(10). See 2021, No. 162 (Adj. Sess.), §§ 2, 10. Relevant here, the Legislature added two terms, among others, to § 4802's definition of "agricultural activities": "subsurface drainage of farm fields" and "operation of farm machinery and equipment, including irrigation and drainage systems." 6 V.S.A. § 4802(10)(D), (F).

¶ 33. Vorsteveld contends that the amendments adding subsurface drainage and irrigation systems to the list of permitted agricultural activities is a postjudgment change in the law that would now allow it to satisfy 12 V.S.A. § 5753(a)(1)(D). Setting aside questions of whether trespassory water discharges from the tile-drain system could give rise to a rebuttable presumption

15

in the context of a nuisance claim and whether the court's conclusion that it "did not fault [Vorsteveld] for using subsurface drain tiles" as such under § 5753(a)(1)(D), Vorsteveld does not claim that it can meet elements A and C, even considering the June 2022 amendments. The statute is clear that "all" four elements must be met to give rise to a rebuttable presumption. 12 V.S.A. § 5753(a)(1). Because the trial court found that Vorsteveld does not meet A and C and Vorsteveld does not argue that the postjudgment amendments alter this conclusion, the court did not err in concluding that the amendments provided no basis for relief from the judgment under Rule 60(b)(5) or (6).

## F. Evidentiary Hearing

¶ 34. Finally, we address Vorsteveld's argument that the court abused its discretion by denying Vorsteveld's request to hold an evidentiary hearing on its Rule 60(b) motion.

¶ 35. Evidentiary hearings on Rule 60(b) motions are preferred, but "are at the discretion of the trial court and are unnecessary . . . when a court finds that the explanations offered by a party are unreasonable." Sandgate Sch. Dist., 2005 VT 88, ¶ 12; see Shaw v. Barnes, 166 Vt. 610, 610, 693 A.2d 710, 711 (1997) (mem.) ("A trial court has wide discretion in deciding whether to hold a hearing on a new trial motion."). "A hearing on a [postjudgment] motion, while generally favored as the better practice, is not mandatory, particularly where . . . the moving party has failed to show prejudice flowing from the lack of a hearing." Jewell v. Dyer, 154 Vt. 486, 488, 578 A.2d 125, 126-27 (1990).

¶ 36. The trial court determined that Vorsteveld did not allege sufficient postjudgment changes in fact or law to justify a hearing. As the discussion above demonstrates, see supra, ¶¶ 13-33, the trial court's decision not to hold a hearing fell within its discretion. Vorsteveld seeks to relitigate several issues resolved in the final judgment. Its challenge to the scope of the injunction is undermined both by its failure to object to it after the court put Vorsteveld on notice of the proposed language and its failure to timely appeal the injunction. Moreover, Vorsteveld knew in

16

August 2022 when the court entered final judgment that EPA was investigating it for filling a wetland and should have anticipated what potential consequences could follow. Its arguments concerning changes to the Right-to-Farm law ignore elements it must meet, but cannot, even considering the June 2022 additions to the law. Indeed, with the exception of the amendments to the Right-to-Farm law, Vorsteveld knew or should have known about all the factual and legal issues it raises in its Rule 60(b) motion at the time the trial court entered final judgment. Put differently, it has presented no facts requiring an evidentiary hearing to further develop the record at this point. See Altman v. Altman, 169 Vt. 562, 564, 730 A.2d 583, 585-86 (1999) (mem.) (explaining that Rule 60(b) does not relieve party from choices and tactics that appear ill-advised in retrospect). For this reason, Vorsteveld has also failed to show that the lack of a hearing resulted in prejudice. Jewell, 154 Vt. at 488, 578 A.2d at 126-27. There is no detriment to Vorsteveld's position where it has failed to offer a reasonable basis to hold a Rule 60(b) hearing.

Affirmed.

FOR THE COURT:

_____

Associate Justice

17