VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org



Case No.      24-AP-258

*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

MAY TERM,  2025

Aerie Point Holdings, LLC v. Vorsteveld
Farm, LLC*

}
}
}
}
}
}

APPEALED FROM:

Superior Court, Addison Unit,
Civil Division
CASE NO. 72-4-20 Ancv
Trial Judge: Mary Miles Teachout
Superior Judge (Ret.), Specially Assigned

In the above-entitled cause, the Clerk will enter:

Defendant Vorsteveld Farm, LLC appeals the civil division's order holding it in contempt of an injunction previously issued by the court.  We affirm.

This is defendant's third appeal in this case.  In 2020, plaintiff Aerie Point Holdings, LLC sued defendant for trespass and nuisance, alleging that increased runoff from defendant's dairy farm had caused water, sediment, and pollution to travel onto plaintiff's land and into Lake Champlain.  In March 2022, the civil division issued a decision concluding that plaintiff had proved its claims and was entitled to injunctive relief.  It enjoined defendant "from allowing water, and any particles it carries, from flowing from the discharge points of [d]efendant's drain tile system into the public ditches and culverts westerly of [d]efendant's land on Arnold Bay Road between Adams Ferry Road and Pease Road."  Defendant did not timely appeal the final judgment.  See Aerie Point Holdings LLC v. Vorsteveld Farm LLC, No. 22-AP-279, 2023 WL 2867097, at \*4 (Vt. Apr. 7, 2023) (unpub. mem.) [https://perma.cc/UH7G-BWPZ].

In June 2023, plaintiff moved to hold defendant in contempt for failing to comply with the injunction.  While that motion was pending, in August 2023, defendant moved for relief from judgment under Vermont Rule of Civil Procedure 60(b).  The trial court denied defendant's Rule 60(b) motion, and we affirmed.  Aerie Point Holdings, LLC v. Vorsteveld Farm, LLC, 2024 VT 29, ¶ 1.

The court held a multi-day hearing on plaintiff's contempt motion in December 2023. In January 2024, it issued an order finding defendant in contempt of the injunction. The court found that defendant took no specific action to comply with the injunction from the time it was issued through April 2023, when this Court issued its decision in the first appeal, even though defendant did not seek to stay the injunction. Meanwhile, defendant spent $700,000 to purchase additional acreage. In August 2023, defendant hired an engineer to begin addressing the injunction requirements. In October 2023, defendant installed an experimental flow regulator on one of the fifteen to sixteen discharge outlets from the tile drainage system. It would take a year to obtain results and the flow regulator by itself was unlikely to sufficiently prevent continued erosion and deposits of phosphorus and sediment on plaintiff's land. Defendant did not seriously investigate options for diverting water from the discharge outlets for other uses until a few days before the December 2023 contempt hearing, when it began to develop plans for compliance. The court rejected defendant's argument that it was in compliance because it did not discharge water from the tile drain outlets directly into the ditch along Arnold Bay Road. The court explained that "the water from the tile drain outlets drains into the two streambeds, which carry it to the ditch and through the culverts under Arnold Bay Road in such a manner that its volume and velocity as it moves through the streambeds to Lake Champlain on [plaintiff's] land cause the harm described in" the merits decision.

The court concluded that plaintiff had shown by clear and convincing evidence that defendant knew what the injunction required but failed to act. It found that defendant had not complied with the injunction and had not proven that it was unable to comply. However, the court declined to impose sanctions at that time because the parties indicated that they were willing to mediate a potential solution. It stated that if no resolution was reached by May 2024, plaintiff could file a supplemental motion for sanctions. It further concluded that plaintiff was entitled to recover attorney's fees in connection with the motion for contempt.

Mediation proved unsuccessful, and plaintiff moved for a further hearing on the issue of contempt, additional attorney's fees, and coercive sanctions. The court held a hearing over four days in July and August 2024 and conducted a site visit. In a September 2024 order, the court found that defendant had taken some steps to reduce the rate of water discharge but still was not in compliance with the injunction, as it had not acted to either capture or remove the water as it emerged from the tile drain discharge outlets or before it reached the ditch. The court noted that since the injunction was issued, defendant had spent $1.1 million to purchase additional land and an expensive new planter. The court concluded that unless defendant faced significant economic pressure, it would avoid full compliance. The court ordered defendant to pay $1000 per day for each day that it was out of compliance, beginning in November 2024. Defendant appealed.

To prevail on a motion for contempt, a plaintiff must prove by clear and convincing evidence that there was a court order that required specific action and that the defendant had actual knowledge of the order and failed to comply. Vt. Women's Health Ctr. v. Operation Rescue, 159 Vt. 141, 146 (1992). "[I]f the contemnor alleges that his compliance either with the original order or the purgative conditions is impossible, it is his burden to establish the facts necessary to justify the failure to comply." Spabile v. Hunt, 134 Vt. 332, 335 (1976). "[W]e will not disturb the judgment unless the court's discretion was entirely withheld or was exercised on grounds clearly untenable." Vt. Women's Health Ctr., 159 Vt. at 147 (quotation omitted). We will affirm the court's factual findings if supported by substantial evidence, even if there is contradictory evidence in the record. Id.

2

On appeal, defendant argues that the trial court impermissibly expanded the scope of the injunction in the contempt orders by requiring defendant to stop all water from exiting the tile drains. Defendant argues that the contempt orders are inconsistent with the trial court's finding in the merits order that it is the discharge of excess water that causes harm to plaintiff's land. Defendant argues that the injunction was intended only to prohibit "excess" water and did not require defendant to stop the natural pre-existing water flow downslope from its land.

Defendant's claims lack merit. The injunction enjoins defendant from allowing water from the tile drains to enter the public ditches that carry water onto plaintiff's land. This plainly means any water from the tile drains. The trial court's contempt order is consistent with the language of the injunction and does not expand its scope. It is also consistent with the merits decision, which read as a whole makes clear that the water from the tile drains is the "excess" water the injunction seeks to prohibit.[*] Contrary to defendant's assertion, the court did not require defendant to dispose of all surface runoff from town roads, overland flow, and public ditches; it merely observed that if defendant did not stop the water at the discharge outlets, but further downhill, the tile drain water would be mixed with some surface runoff and all of it would have to be removed to ensure that the tile drain water did not reach the public ditch. This was a rational observation and is consistent with the injunction.

Defendant further claims that the court erred in finding that defendant had actual knowledge of what the injunction required. We disagree. Hans Vorsteveld, one of defendant's owners, stated in a July 2023 affidavit that "I am aware of this court's August 2022 order that requires Vorsteveld Farm . . . to prevent water from our tile drains from reaching the ditch along Arnold Bay Road." Gerald Vorsteveld, another owner, testified at the December 2023 hearing that "[t]he injunction, I thought, pretty much said that you can't let the tile water go into the town ditches and in the culverts . . . across Arnold Bay Road." These statements support the court's finding that defendant's owners were aware of what the injunction required.

While defendant claimed to be confused about what was actually required because of the court's shifting interpretations, the trial court did not find this to be credible. It found that defendant had chosen to misinterpret the injunction in a way that would absolve it of having to comply. This finding is supported by the record, which shows that defendant has repeatedly asserted that the injunction is unenforceable because it required defendant to stop "all" water— not just the water from the tile drains—from exiting defendant's property and entering plaintiff's property. This Court rejected that argument in our decision in defendant's second appeal, explaining that "[defendant] was on notice that the court had proposed only to enjoin water from the tile-drain discharge points from reaching [plaintiff], not all water from [defendant]'s land, as

---

[*] In the merits decision, the trial court found that defendant had disposed of wastewater from its agricultural activities by sending it through the culverts under Arnold Bay Road to flow onto plaintiff's land. "The amount and velocity of the disposal is in excess of the preexisting level of natural drainage from the upgradient Vorsteveld Farm land. The natural level was established during several years prior to 2014 and continued until 2017." The court acknowledged that climate change may have exacerbated the effect by contributing extra water, but found "significant evidence from multiple sources that the majority of the excess water comes from the Vorsteveld Farm tile drainage system." The court went on to find that "the excess water that flows across Aerie Point land carries with it sediment in excess of the amount that would be carried by natural intermittent drainage from spring thaws and heavy rains."

it contends on appeal." Aerie Point Holdings, LLC, 2024 VT 29, ¶ 15. We noted that in fashioning the injunction the trial court had specifically rejected plaintiff's proposal that defendant be enjoined from allowing "all" water to flow onto plaintiff's land, and instead focused solely on the water from the tile drains. Id. ¶ 16 n.3. Despite the plain language of the injunction itself and these clear statements, defendant's mitigation measures were deliberately designed to reduce only ten percent of the flow from the tile drains—i.e., the portion that defendant unilaterally decided was "excess."

Defendant also argues that the court erred in finding that it failed to comply with the order. It argues that the court did not give adequate consideration to evidence that rainfall had dramatically increased since the injunction was issued, that the sediment flowing onto plaintiff's land is likely from the dirt roads and not defendant's fields, that the culvert on plaintiff's land is probably blocked, and that defendant had reduced runoff from the tile drains by installing stone interceptors and "silt sox" and maintaining grass buffer strips in certain locations on its fields.

The trial court's order belies defendant's claim, as it expressly or implicitly considered all of the evidence cited by defendant. The court found, however, that "the effect of the tile drain discharges on [plaintiff's] land is essentially unchanged" because there continued to be high-velocity flows of brown, murky, and sometimes foamy water across plaintiff's land after every rain event. While defendant's mitigation steps may have reduced sediment and phosphorus and possibly slowed the rate of the water flow, all of the water continued to flow out of the tile drains, into the ditch, and onto plaintiff's land. The evidence—which included testimony and photo and video evidence presented by plaintiff's owners, the trial court's own observations, and defendant's engineer's statement that his proposed measures were only designed to divert ten percent of the water from the tile—supports the court's findings, which in turn support its conclusion that defendant was not in compliance with the plain terms of the injunction.

Defendant argues that there was no evidence presented at the contempt hearing to support the court's statement that the water from the tile drains contains phosphorus and sediment. The trial court previously found based on expert testimony presented at the merits hearing that the brown, murky water discharged during rain events contained phosphorus and sediment across plaintiff's land. The trial court observed clear water exiting some of the upslope tile drains during its site visit and acknowledged that Gerald Vorsteveld drank some of the water and testified that he did not get sick. However, defendant's engineer admitted that clear water may still contain particles, and the court found that by the time the water got to the ditch during rain events it was brown, murky, and sometimes foamy. The court also considered the water tests conducted by defendant's engineer in July 2024, which showed that phosphorus and sediment levels were low. The court found that because the tests were conducted a week after the last rainfall, the test results were insufficient to prove that the water discharged during rain events no longer carried phosphorus and sediment onto plaintiff's land. Given its previous findings in the merits order, the court could rationally infer from the evidence presented that the tile water discharge during rain events continued to contain phosphorus and sediment. See State v. Durenleau, 163 Vt. 8, 12 (1994) ("In assessing circumstantial evidence, the fact-finder may draw rational inferences to determine whether disputed ultimate facts occurred."); Lanfear v. Ruggerio, 2020 VT 84, ¶ 22, 213 Vt. 322 (explaining that we leave it to "sound discretion" of trial court "to determine the credibility of the witnesses and to weigh the evidence" (quotation omitted)).

4

We have considered all of defendant's arguments and conclude that they lack merit. The trial court acted within its discretion in holding defendant in contempt of the 2022 injunction.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice


_____
Karen R. Carroll, Associate Justice


_____
Timothy B. Tomasi, Superior Judge,
Specially Assigned